BENJAMIN THOMAS, *alias* NOISETTE, plaintiff in error, *vs.*
THE STATE OF GEORGIA, defendant in error.

1. When on a trial of an indictment for assault with intent to murder,
there was evidence by one witness that the defendant had struck A
with a hatchet, and the defendant introduced only two witnesses, who
swore that they saw part of the fuss, but could not say who struck the
blow, as there was a great row and many persons present :

*Held,* that testimony showing that a third person struck the blow, and
that the defendant did not strike at all, is not merely cumulative tes-
timony so as to be no ground for a new trial.

2. When there was a difficulty between a parcel of employees and their
foreman, and a fuss or melee, and the defendant immediately arrested
and confined in jail until his trial, and his attorney, on inquiring of
the persons present, was misled by their telling him they did not know
what part defendant took in the fuss :

*Held,* that when after the trial it was discovered that these witnesses do
know and are ready to swear that the defendant did not do the princi-
pal act for which he was convicted, and that another did, it is no reply
to a motion for a new trial that sufficient diligence had not been shown.  .

Criminal law.  New trial.  Newly discovered evidence.
Before Judge SCHLEY.  Chatham Superior Court.  Novem-
ber Special Term, 1873.

The plaintiff in error was indicted for assault with intent
to murder.  The following is a condensed statement of the
material points of the evidence :

· FOR THE STATE.

CORNELIUS DONOVAN sworn : I have charge of the hands at
the cotton press.  My business is to see that they work ; it is
customary for them to report to me after having been absent ;
Ben. Thomas had been absent, and returned December 10,
1873 ; I asked him where he had been ; he replied it was
none of my business; had a pair of shears, about eighteen
inches long, and five to six pounds in weight, in my hands;
they are necessary in my business.  Asked defendant if he
had reported.  He replied it was none of my business ; to
kiss his ....... Had the right to ask him the question.  I
then called him a s...... of a b ....., and told him I was a white

Thomas, *alias* Noissette, *vs*. The State.

man. Made no effort to strike him, but bent forward to speak to him, when he struck me on the back of the head with a hatchet. (Weapon shown.) The blow was not a very heavy one. Great deal of blood flowed. He hit me again over the eye. Caught him by the collar. No white man was present. Colored hands cried "kill him!" I was struck by Lewis Thomas, another of the colored hands, brother of the defendant, with an iron rod. I attended the double cock at the press, and defendant was one of the tailors. Had no previous quarrel with defendant. Don't know why the hands were angry with me. Difficulty occurred about 7 A. M.

A. N. HILL, sworn: Few minutes after 7 A. M., 10th December, 1873, at Central Cotton Press, heard cries of "kill him?" They came from the colored hands; saw Donovan bleeding. The hands appeared excited. Each of the presses has a hatchet like the one in court. The tailors use it. Defendant is a tailor. I did not see the difficulty. Saw no weapon in defendant's hands; a great many present and great confusion.

FOR DEFENDANT.

M. J. SOLOMONS, sworn: He raised defendant, and he was of good character, and not quarrelsome.

JAMES DRAYTON, sworn: Was not present at the difficulty. Did not see the cutting. Don't know who cut Donovan. Was near by. Heard the fuss. Looked and saw defendant and Donovan coming out together, both having the hatchet in their hands. Some one behind jerked it from them. Donovan attempted to strike defendant with the shears. I prevented him. Heard no cries of "kill him!" Could have heard them if very loud.

LEWIS NOISETTE, sworn: Did not see the fight, and did not see Donovan when struck. Was close by, and heard Donovan curse defendant a s... of a b....... I told him to quit cursing. He said he "would curse him and cut my throat, a damned negro." I went near him, and he kicked me over the eye. The crowd then rushed in, and I could see

no more of it. I did not see the blow. When Donovan ran towards defendant he was out of my sight. Was near by when difficulty occurred. Heard no cries of " kill him!" that I remember. Struck Donovan with an iron bar when he kicked me. Am defendant's brother.

PRISONER'S STATEMENT : December 10, 1873, at seven A. M., I went to the office of the Central Cotton Press, and reported for work. Afterwards, Mr. Donovan asked me if I had reported ; I said " Yes ;" he got angry, and cursed me ; he and my brother had words ; Donovan came towards me with this hatchet; we had a scuffle; during it some one struck Donovan ; don't know who it was.

The jury found a verdict of guilty.

The defendant moved for a new trial on the ground of newly discovered evidence, contained in affidavits, which were as follows :

Affidavit of MORRIS LEE, beginning as usual, was thus : I was at the difficulty at the Central Cotton Press in December, 1873, in Savannah, where Mr. Cornelius Donovan received the wounds upon the head, for which Benjamin Noisette has been prosecuted ; I was employed as foreman of the press ; hearing that a difficulty was about to start, I went to the press ; saw Mr. Donovan pick up a pair of shears used in cutting cotton bands, and pass through the midship way, a space between the presses, and go into the gangway, where the two Noisette's were; saw Lewis holding the hatchet in his right hand, and holding it up as if to strike ; Ben. took it out of Lewis' hand, when Lewis took the reefing needle from the post, and struck Mr. Donovan twice with it upon his head ; saw the blood flow from Mr. Donovan's head as soon as the blow was given ; Donovan was making for Ben. at the time, and clinched him as soon as Lewis struck him, Donovan holding, at the time, the shears in his hand, and raised as if to strike ; I got between him and Ben., took the hatchet from Ben. and another man took the shears from Donovan ; I am certain that Donovan was not struck with the

hatchet by Ben. or any one else, and that the wounds he received upon the head were inflicted by Lewis Noisette, as above stated. I saw all of the fight from the beginning to the end. The hatchet was not at all bloody after the difficulty, the red color on it being merely the red paint with which it was originally stained. The needle which Lewis used was bent after the fuss was over. This is made of iron; is about three feet long, and about as large around as my little finger.

Affidavit of DANIEL BUTLER, beginning as usual, reads thus: I was present at the difficulty at the Central Cotton Press, in this city, December 10, 1873, when Mr. Donovan was struck upon the head. I was employed as head second in the gangway. Mr. Donovan and Ben. Noisette had first some words about the latter's absence, and as to whether he had reported, when the conversation was taken up by Lewis, Ben's brother. Some words then passed between them, when I saw Lewis Noisette take up a hatchet from the post in the gangway, and raise it in his right hand. At this time I was going around the upper press to take the patches off the cotton bale, and at this time I passed out of view of the difficulty. In a few minutes I returned, and again got in view of the difficulty; at this time Mr. Donovan had not been cut; I then saw Lewis Noisette with a reefing needle in his hand, and saw him raise it and strike Mr. Donovan on the head with it; there was, at this time, a large crowd of men standing around, and a great deal of confusion; at the time Mr. Donovan was struck by Lewis, he and Ben. were tussling together, and they continued so, Mr. Donovan holding on to Ben. until they got to the office, a distance of thirty-five or forty feet; I am certain that Ben. Noisette did not strike Mr. Donovan with a hatchet, and that the wound he received upon the head was made by Lewis Noisette with the reefing needle, while Ben. and Donovan were tussling together in the gang-way; this reefing needle is made of iron, about two feet in length, and about half an inch in diameter; I picked up the hatchet with which Donovan afterwards said he was struck, and also the reefing needle, with which the blow upon the head was inflicted by

Lewis; the needle was bent; the hatchet had no blood upon it; it was originally stained with red paint, and some of the paint is now worn; I had used this hatchet before this difficulty, and from the time of the difficulty to the day of Benjamin Noisette's trial for "assault with intent to murder," when Mr. Donovan got it for the purpose of carrying it into court; its condition, color, etc., are the same now as they were before the difficulty, and the red stain is from the paint with which it was always colored. The above facts I am ready to testify to, should there be another trial in the case of the The State *vs.* Benjamin Noisette, charged with "assault with intent to murder."

Affidavit of EDWARD MILLER, beginning as usual, reads thus: I was employed at the Central Cotton Press in Savannah, 10th December, 1873, when Mr. Cornelius Donovan received his wound upon the head; when the difficulty began I was about twenty-five steps or more from the press, in ranks, the roll being called, and did not see the commencement of the fight; when I came upon the gangway I saw Mr. Donovan and Benjamin Noisette holding each other, tussling; Mr. Donovan had, at the time, no wound upon the head that I could see; I then saw Lewis strike Donovan on the head with an iron reefing needle; Donovan and Ben. continued clinched, and Donovan pulled the latter up to the office; I am certain that Ben. did not strike from the time I saw them, as above stated, to the time they were parted. I am ready to testify to the above facts, should a new trial be had.

Accompanying the foregoing affidavits was the affidavit of A. P. ADAMS, alleging, in substance, as follows: That the applicant was the counsel of Benjamin Noisette; that the evidence contained in the foregoing affidavits was not known at the time of·the trial; that it was discovered since; that he used due diligence to obtain the testimony that could be procured in the case; that he was employed a day or two after the difficulty, and at once saw personally those whom he was informed were cognizant of the facts of the case; that these persons stated that they were ignorant as to the material points

in the occurrence; that after the conviction of Benjamin Noisette, learning that Lewis Noisette had departed from the city, affiant, believing that there were some of these persons who were acquainted with the material facts concerning the difficulty, considered it his duty to again see those whom he could ascertain were present at the time of the occurrence, and he strongly urged the duty that devolved upon them to state whatever was in their knowledge touching the matter; certain of the persons then admitted that they did know more about the affair than they were willing originally to admit, and that, as they were all employees of the press, they feared that they would lose their situations if they testified in the case, as their testimony would bear against the prosecution; that it was this fear that caused them to avoid being witnesses. Affiant stated further, that in a few days he expected to get the affidavits of four or five others, to the same effect as the foregoing affidavits.

The motion was overruled, and defendant excepted.

A. P. ADAMS, by HENRY B. TOMPKINS, for plaintiff in error.

ALBERT R. LAMAR, solicitor general, for the state.

McCAY, Judge.

1. The newly discovered evidence is certainly material, and such as may, on another trial, alter the verdict. The principal witness who testified at the trial may have been mistaken as to who struck him. In such a *melee* as this was, such a mistake might well occur. The affidavits are very positive and clear, and if they are to be credited, the defendant is clearly not guilty of assault with intent to murder. Nor is the evidence, in any fair sense, cumulative only. True, it goes to the principal fact controverted on the trial, to-wit: who struck Donovan; but upon that point the prisoner produced no evidence. Both of his witnesses testified that they did not see that blow struck; and, though they were close at hand, this

might well be. Who does not know how common it is for persons to be in the middle of just such a scene, and yet not be able to tell who did this and who that? To make a case of cumulative evidence, it must be not only on a point principally controverted at the trial, but a point on which the party seeking the new trial produced evidence.

2. Nor do we think there is a want of diligence. The prisoner was arrested immediately, and has had no opportunity for inquiry. His brother, with whom he may be presumed to have had intercourse, was, as the affidavits show, himself the one who struck the blow. When counsel, assigned by the court, undertook to inquire into the facts, he was unable to get at the truth, the witnesses refusing to tell what they knew, and misleading him by saying they knew nothing. They did wrong; but was the prisoner to blame for that? Could he know that, if put on the stand, they would testify as they say? He might well think they did not see the blow struck. Upon the whole, we think the principles of justice require that there should be a new trial in this case.

Judgment reversed.