## MERRITT *v.* THE STATE.

1. The court instructed the jury as follows: "The reasonable doubt which the law recognizes and gives the defendant the benefit of, where it exists, is not a vague, indefinite, or capricious doubt; but is such a doubt as arises from the evidence or want of evidence, and causes your minds to be halting, hesitating, unsatisfied, and refusing to reach a conclusion that is satisfactory to you." This charge was not erroneous, as alleged in the motion for a new trial, on the grounds: (*a*) That it "resulted in an intimation of opinion by the court that in the case at bar no doubt existed, the interpolation of the words 'where it exists' conveying the impression that the court was of the opinion that it did not exist in the trial of the case at bar." (*b*) That it "was confusing and misleading to the jury trying the case, and, being incorporated in the definition of a reasonable doubt, destroyed the effect of such definition and led the jury to believe that the existence of such doubt must be first affirmatively established in some manner, before the defendant should be given the benefit of it."

2. The court instructed the jury: "The defendant in this case, as in all criminal cases, has the right to make to the court and jury such statement in the case as he may deem proper in his own defense. That statement is not made under oath, and shall have just such weight and credit as the jury may think proper to give it. They may believe the statement in preference to the sworn testimony in the case; and if they see fit to do so, they may disregard it entirely." This charge was not erroneous on the alleged grounds: (*a*) that "It served to discredit the statement of the defendant to the jury, for the reason that it did

not follow the language of the statute and inform them that the man-
datory provisions of the law permitted the defendant only to make a
statement and not to swear, but conveyed to them the impression that
' that statement ' is not made under oath at the instance of the defend-
ant, and that had he so elected he might have been sworn." (b) That
"It did not acquaint them with the general provision of the law regulat-
ing the statements of defendants, and providing that such statements
shall not be under oath." (c) That "It emphasized to the jury the
fact that the statement that had been made to them by the defendant
on trial was not made under oath, and failed to acquaint them with
the fact that the sanction of an oath was not permitted the defendant
under the law of Georgia in making his statement." (d) That "It was
directly prejudicial and hurtful to the defendant in forcing him to
bear the responsibility for having delivered his statement unsworn,
when under the law the responsibility was governed by statute, and no
right to testify under oath accorded him."

3. The third ground of the motion for new trial complains of the charge:
"The defendant contends that he is not guilty. He admits the killing,
but contends that the killing was done under such circumstances that
the law justifies. He contends that the deceased drew his pistol, that
he intended to kill him, and that he shot the deceased to protect his
own life." This instruction stated one of the contentions made by the
prisoner in his statement before the jury, and, considered in connection
with other portions of the charge, was not error on the alleged ground
"that it withdrew from the jury a contention of the defendant that
he acted under the fears of a reasonable man, at the time of the killing,
that his life was in danger, and restricted them to a consideration
whether, as a matter of fact, at the time of the shooting the life of
the defendant was in actual danger."

4. The fourth ground of the motion for new trial complains that the
court erred in instructing the jury as follows: "Now, gentlemen, you
look to the evidence and the defendant's statement; and if you believe
from the evidence and the defendant's statement that the contentions of
the defendant are true, you should acquit the defendant." The assign-
ments of error on this instruction are: "(a) It directed the jury
trying the case to find the defendant guilty even though he had fully
established his contentions as to the circumstances and facts of the
homicide. (b) It restricted the jury, in the consideration of whether or
not the contentions of the defendant had been established, to a con-
sideration both of the evidence and the defendant's statement, and did
not permit them to determine that the defendant's contentions had
been established by his statement alone, without reference to the other
testimony in the case. (c) Said charge was confusing and misleading
to the minds of the jury, in that it tended to impress upon their
minds that the defendant was forced to establish to their satisfaction
the contentions made by him, and not that he could either establish his
contentions or engender a doubt in their minds as to the contentions
of the State." The fifth ground of the motion for a new trial is as
follows: "Because the court erred in charging the jury trying said
case as follows: 'The defendant has made a statement in which he

tells you that he shot the deceased to save his own life. The circumstances surrounding him at the time he shot you must gather from the testimony and the defendant's statement.' This charge was error, and was directly prejudicial, hurtful, and harmful to the defendant and his case, for the reasons that: (a) It required the jury to determine the circumstances surrounding the shooting from the testimony and the defendant's statement, and did not allow them to gather such circumstances from the defendant's statement alone, as they had a legal right to do. (b) It made mandatory upon the jury a consideration of both the sworn testimony and the defendant's statement in determining the surrounding circumstances at the time of the shooting, and did not allow them to take the defendant's statement in preference to the sworn testimony if they so desired. (c) It withdrew from the jury the right to believe the statement of the defendant in preference to the sworn testimony with respect to the surrounding circumstances of the shooting, which were the vital issues of the case and upon which the defense was based, and required them to determine those circumstances both from the sworn testimony and the defendant's statement." There is no merit in any of the assignments of error upon these instructions. We will deal specifically only with the assignment of error " (b) " on the instruction referred to in the fourth ground, and the assignments " (a)," " (b)," and " (c) " on the instruction quoted in the fifth ground; and for the reason that this court held in Rouse v. State, 135 Ga. 227 (3), 228 (69 S. E. 180) : " As the jury has the right to believe the statement of the defendant in preference to the sworn testimony, it was error to charge the jury as follows: 'If Rouse tells the jury in his statement that he shot Bailey to save his own life, the circumstances surrounding him at the time he shot you must gather from the sworn testimony and facts admitted and the defendant's statement.' " That decision, however, was rendered by only five Justices, and therefore is not binding authority. The majority of the court as now constituted is constrained to disagree to the soundness of that ruling. On the trial of one accused of a criminal offense the jury in arriving at a verdict is bound to consider both the evidence submitted, and the statement of the prisoner made to them. In the trial of a criminal case the jury is sworn to well and truly try it and a true verdict give according to the law as given them in charge and the opinion they entertain of the evidence produced to them. Penal Code, § 860. " In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case." Penal Code, § 1036. In McTyier v. State, 91 Ga. 254 (18 S. E. 140), the trial judge instructed the jury as follows: " Now, if you find from the evidence in this case, considering in that connection the prisoner's statement," etc. The error alleged was that the instruction restricted the statement and left the jury no alternative but to consider it with the evidence and not otherwise. It was held that the instruction was not error as against the accused, the charge as to the statement being otherwise

full, complete and correct. In *Vaughn* v. *State*, 88 *Ga.* 731 (16 S. E. 64), it was said: " The jury trying a criminal case are sworn to give a true verdict according to evidence. It is important for them not to confound the prisoner's statement with the evidence or the evidence with the statement. The statute allows them to give the statement such force as they think proper, and even to believe it in preference to the sworn testimony. In charging them the court should keep the evidence distinct from the statement and shape the general tenor of the charge by the evidence alone and the law applicable to it. For if the court should mingle evidence and statement together, the jury might find it difficult to separate them and might fail to understand the import of the instructions delivered from the bench. At some stage of the charge the statutory provisions touching the statement ought to be made known to the jury; and this, as has frequently been suggested by this court, is usually enough to say touching the statement. The statute on that subject is so plain and explicit as to need no exposition or comment." Among others, the following cases are to the same effect: *Miller* v. *State*, 94 *Ga.* 1 (2), 13 (21 S. E. 128) ; *Lacewell* v. *State*, 95 *Ga.* 346 (2), 348 (22 S. E. 546) ; *Howie* v. *State*, 114 *Ga.* 19 (7), 24 (39 S. E. 944) ; *Tolbirt* v. *State*, 124 *Ga.* 767 (2), 771 (53 S. E. 327) ; *Jordan* v. *State*, 130 *Ga.* 406 (5), 408 (60 S. E. 1063) ; *Tucker* v. *State*, 133 *Ga.* 470 (5)   (66 S. E. 250). In the case at bar the judge clearly, fully, fairly and correctly instructed the jury as to the rules by which the jury is to pass on the credibiity of witnesses and as to determining the weight of evidence, and also as to the law applicable to the prisoner's statement.

ATKINSON and HILL, JJ., dissenting from the ruling in this note. The excerpt from the decision in *Rouse* v. *State*, supra, quoted by the majority, states a correct principle of law applicable to this case. See also *Edenfield* v. *State*, 26 *Ga. App.* 206 (108 S. E. 124). The charge complained of furnishes ground for reversal.

5. A juror in a criminal case who is related either by consanguinity or affinity within the ninth degree to the prosecutor, ascertained according to the rules of the civil law, is a disqualified juror; and such disqualification of a juror, unknown to the defendant until after verdict, is good cause for a new trial, even if the juror was unaware of the disqualification before the verdict. *Crawley* v. *State*, 151 *Ga.* 818 (108 S. E. 238).

(*a*) That a juror is related to the prosecutor in a criminal case within the prohibited degree, which fact is unknown to the defendant or his counsel until after verdict, or which could not have been ascertained by either of them before verdict by the exercise of due diligence, is cause for a new trial on the ground of newly discovered evidence.

6. Where a motion for new trial " is made on the ground of newly discovered evidence, it must appear by affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence." Civil Code, § 6086; Penal Code, § 1088. Under application of the foregoing rule, in a criminal case where newly discovered evidence showing disqualification of a juror on

account of relationship to the prosecutor by marriage, unknown to the defendant or his counsel until after verdict, is relied on as a ground of a motion for new trial, the defendant makes out a prima facie case by showing that the juror and prosecutor were related by marriage within the prohibited degree at the time of the trial; that neither the defendant nor his counsel knew of the relationship until after verdict; and that in response to questions propounded on the voir dire the juror stated that he was not related to the prosecutor by blood or marriage. Where such a prima facie case is made out, it will not be sufficient to prevent a new trial for the State to show that the defendant was remotely related to the wife of the prosecutor, and that one of his remote relatives was related by marriage to the juror; that while striking the jury the defendant's counsel called upon an old citizen, also remotely related to defendant, the juror, and the prosecutor, to give information as to the relationship of jurors to the prosecutor and the defendant, but did not ask him specially as to the relationship of the disqualified juror.

7. As a new trial will result from the ruling in the preceding note, it is unnecessary to rule upon the assignment of error based upon the alleged misconduct of the jury, which would not likely occur on another trial.

No. 2596.  December 15, 1921.

Indictment for murder. Before Judge Summerall. Coffee superior court. April 9, 1921.

*McDonald & Willingham,* for plaintiff in error.

*R. A. Denny, attorney-general, A. B. Spence, solicitor-general, Graham Wright, asst. atty.-gen., T. A. Wallace,* and *Dickerson & Kelley,* contra.

Atkinson, J. 1-5. The rulings announced in headnotes one to five, both inclusive, and seven do not require elaboration.

6. The seventh ground of the amended motion for new trial was based on the alleged disqualification of Amos Meeks, as one of the jurors who participated in rendering the verdict, on account of his relation by marriage to David Harper, brother of the deceased and prosecutor in the case, within the prohibited degrees, such relation being unknown to defendant or his counsel until after verdict. As a part of this ground certain affidavits were set forth, in substance as follows: Daniel Gaskins Sr. testified, that he was seventy-three years of age, a resident and citizen of the county, and grandson of Mark Lott; that the great-grandfather of Drucilla Harper, wife of the prosecutor, and great-grandmother of Amos Meeks, the juror, were brother and sister, being children of Mark Lott, the common ancestor; that he was present in court a portion of the time that Robert Merritt was being tried for the

killing of Walter Harper, and saw that Amos Meeks served as one of the jurors that returned a verdict of guilty against the defendant; that he was not connected with the trial of the case in any way, either for the State or defense, and did not communicate the facts as to such relationship between the juror and prosecutor to either the defendant or any one connected with the case until after the trial. Vincent Carver testified confirmatory of those portions of the testimony of Daniel Gaskins Sr. which related to the pedigree of the wife of the prosecutor. Robert Merritt, the defendant, testified: That at the time of the trial David Harper, the brother of the deceased, took an active part in the handling and conduct of the prosecution, and his name appeared upon the indictment as the prosecutor; that at the trial the relatives of the prosecutor were ruled by the court disqualified as jurors, and in the selection of a jury each juror was questioned under oath with respect to their relationship to the deceased or the prosecutor, and whenever a juror answered that he was related to the prosecutor, either by blood or marriage, he was held incompetent to serve and excused for cause; that a jury of twelve men was selected and sworn to try defendant, and Amos Meeks was one of them, and the jury returned a verdict finding defendant guilty; that Amos Meeks, when questioned on his voir dire, testified under oath that he was not related to the prosecutor in the case, and deponent believed said juror and relied upon his evidence that he was not related to said prosecutor by blood or marriage, and deponent did not have any knowledge, notice, or information that said Amos Meeks, was related to the prosecutor by marriage or otherwise; that he had no means or opportunity or way of ascertaining the fact of such relationship, for the reason that the juror had testified that he was not so related by blood or marriage, and this defendant had no cause for suspecting that he was so related, and could not have ascertained the same by the exercise of ordinary care and diligence, and for the reason that he had no information whatever of the ancestry or kinship of said Amos Meeks; and that the first intimation deponent ever had as to such relationship was long after said trial had been completed and after he had been convicted and sentenced therein. The defendant's counsel made a joint affidavit confirmatory of the defendant's affidavit as stated above, and further, that they

were the sole representatives of the defendant at the trial; that neither of deponents had any knowledge, notice, or information that the juror, Amos Meeks, was related to the prosecutor, David Harper, by blood or marriage, and had no way or time or means for ascertaining the facts or suspecting that such relationship in fact existed; that they could not have ascertained them by the exercise of ordinary care and diligence, for the reason that said juror was placed upon them for immediate action on their part, and they had no information whatever of his ancestry or kinship, and when he stated under oath that he was not related to David Harper deponents relied upon such statement, having no reason of any kind to suspect otherwise; and that they did not hear of said relationship until long after the trial had been concluded and the defendant convicted and sentenced under the charge for which he was tried.

At the hearing of the motion for new trial the State by way of counter-showing submitted certain affidavits as follows: Daniel Gaskins Sr. testified that he was the same person who made an affidavit in this case to be used as a part of the amended motion for new trial. In addition to his testimony already incorporated in the affidavit referred to, he testified further that no one of counsel representing the defendant nor Robert Merritt himself, at any time during the trial of the case, when he was in attendance at the court during any stages in the trial, inquired of him as to the relationship between the juror, Amos Meeks, and Drucilla Harper, wife of David Harper, the prosecutor. Walter Jowers and J. C. Rawlins, in separate affidavits but using exactly the same language, each testified as follows: " I was present at Douglas in the County of Coffee of said State of Georgia during the October term, 1920, of the superior court of said county, and was present in said court during all of the trial in the case of the State of Georgia versus Robert Merritt, who was charged with murder for the killing of Walter Harper, which trial resulted in a verdict of guilty, with a recommendation of life imprisonment. I was present when the jury which tried said case was selected, chosen, and sworn; and on account of the large relationship which existed in the county, between David Harper, the prosecutor in said case, and Robert Merritt, defendant, Mr. John Hall and Mr. Daniel Gaskins, who are among the oldest residents of Coffee

County, Georgia, were called and requested by Mr. J. N. Mc-Donald, one of the counsel representing the defendant, Robert Merritt, to assist in ascertaining and pointing out the relationship of the jurors to either the prosecutor or the defendant, Robert Merritt, and that upon this request of counsel for the defendant the said John Hall and Daniel Gaskins assisted in pointing out relationships between the jurors and the prosecutor and the defendant; and that Daniel Gaskins was present in said court during the selection of the jury which tried the defendant, Robert Merritt, and that he remained in said court-room, so assisting in the pointing out of relationship until after the juror, Amos Meeks, which sat upon the jury which convicted the defendant, Robert Merritt, had been selected and accepted by counsel representing the State and the defendant, Robert Merritt, and his *counsel,* who represented him upon the trial of said case. I further testify, that Drucilla Harper, the wife of David Harper, the prosecutor, is a daughter of Cinda Paulk Merritt; that it is generally known over the county by the people who know David Harper that Drucilla Harper, his wife, is the daughter of Cinda Paulk Merritt; and that any person who did not know who the wife of David Harper was before her marriage to David Harper could have ascertained the fact upon reasonable inquiry, and by inquiring of any of the people who lived in the community or neighborhood of the residence of David Harper; and that a large number of people attended the trial of said case, who resided in the vicinity and community of David Harper, and David Harper himself, who knew that Drucilla Harper, the wife of David Harper, was the daughter of Cinda Paulk Merritt; that Robert Merritt himself knew that Drucilla Harper, the wife of David Harper, was the daughter of Cinda Paulk Merritt; that Tommie Merritt, the husband of Cinda Merritt, and Robert Merritt Sr., the grandfather of Robert Merritt, defendant, were first cousins, and that Drucilla Harper, the wife of David Harper, and Robert Merritt were cousins themselves, which fact was all known by Robert Merritt, defendant. I further swear, that defendant, Robert Merritt, is a cousin of Tommie Merritt, the husband of Cinda Paulk Merritt, who is related to Amos Meeks, juror, by marriage; and that Robert Merritt, the defendant, knew, or ought to have known, that Drucilla Harper, the daughter of Cinda Paulk Merritt, and the wife

of David Harper, prosecutor, was also related to Amos Meeks; and that if he did not know of said relationship between Drucilla Harper and Amos Meeks, the same could have been ascertained by inquiry either by himself or his counsel who represented him in the trial of said case."

This ground of the motion for new trial, being based on evidence as to disqualification of the juror, discovered after rendition of the verdict, must be determined under application of the rules laid down in the code and set forth in the sixth headnote. The rule provides that " it must appear by affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence." The evidence above stated shows that the movant made out a prima facie case. It showed that the juror Amos Meeks was related to the wife of David Harper, the prosecutor, in the 8th degree, according to the rules of the civil law, by marriage, which would disqualify the juror; the rule being that the relationship of a juror within the 9th degree to the prosecutor will disqualify. The evidence also showed that neither the defendant nor his counsel knew of the existence of such relationship between the juror and the prosecutor until after the verdict. It is mainly contended by the State that a new trial should not be granted, because the defendant could have discovered the relationship which formed the basis of the disqualification of the juror, prior to the verdict, by the exercise of ordinary care. But under the circumstances as to the remoteness of the relationship between the several parties, as disclosed by the evidence above set forth, and the circumstance that the defendant's counsel called upon the witness Daniel Gaskins. Sr. (who the State says, was supposed to have known the relationship of the several parties) for the information touching relationship of all jurors either to the prosecutor or to the defendant, and was not informed by him that this juror was related, and the circumstance that while on the voir dire, in answer to the direct question by defendant's counsel, the juror himself stated that he was not related to the defendant or the prosecutor, it cannot be said that the failure to discover the disqualification of the juror was due to the want of ordinary care upon the part of the defendant or his counsel. The evidence discloses a bona fide effort to

discover all possible disqualifications of jurors, and the conduct of counsel in making such attempt measures up to the rules of ordinary care as provided by the statute. It might have been that if special inquiry had been made of Daniel Gaskins Sr., as to the relationship of this particular juror, the fact of the relationship would have been discovered; but having requested such information from him as to all of the jurors, which would include the juror Amos Meeks, it would be going beyond the requirements of ordinary care to hold the counsel to the necessity of making such special inquiry. See, in this connection, *Thomas* v. *State, 52 Ga.* 509; *Phillips* v. *State, 33 Ga.* 281 (3).

*Judgment reversed. All the Justices concur.*

ATKINSON and HILL, JJ., dissent from the ruling in the fourth headnote.