34378.   ADAMS *v.* WORLEY.

Decided March 14, 1953—Rehearing denied March 31, 1953.

*Grant, Wiggins, Grizzard & Smith, N. E. Parker Jr.,* for plaintiff in error.

*Maurice Hilliard, Nick Long Jr.,* contra.

SUTTON, C. J. ■ The evidence, though conflicting, supports the verdict. It follows, therefore, that the trial judge did not err in overruling the general grounds of the motion for new trial.

■ Special ground 4 of the motion assigns error on the admission of certain testimony on behalf of the plaintiff, from Dr. Martin T. Myers, to the effect that, subsequently to the filing of the suit, he caused X-rays to be made of the plaintiff's knee and treated her for the symptoms found; that he operated on the plaintiff's knee and removed the cartilage in October, 1951; that he found the cartilage was torn and the joint surfaces thickened; and that, after the cartilage has been removed, the knee itself is sore and tender and the weakness of the muscles of the leg would naturally weaken the joint. The defendant objected to the testimony on the ground that the doctor did not attribute

the injury to the accident, and that there was evidence that the plaintiff had an injury to her knee 16 years prior to the accident. The trial judge overruled the objection and admitted the testimony.

In her petition as amended, the plaintiff alleged "that, as a result of the collision set forth in her petition, your petitioner's right knee cartilage was torn and as a result of said injury your petitioner was operated on in said areas and the cartilage removed by Dr. Martin E. Myers on or about October 24, 1951, in the St. Joseph's Hospital," and that by reason of same she incurred certain medical expenses. The plaintiff testified that in the collision her knee struck something; that it hurt her; and that, after she returned to work, her knee "was hurting me all the time; the last two days I worked I could hardly get to work. My knee was all swelled up and I couldn't hardly pick it up. It was my right one. That was the one that was hurt in the wreck. They made some X-rays of my knee. . . I had taken treatments awhile from Dr. Myers, and he gave me heat treatments and he wanted to operate on my knee . . and it kept getting worse and worse, so I called him one day and told him, 'Dr. Myers, I am going to have my knee operated on.' " She further testified that he performed the operation on her knee referred to in his testimony in question in this ground of the motion for new trial.

The contention of the plaintiff in error, that the testimony was irrelevant and prejudicial because there was no testimony to connect the injuries found by Dr. Myers on his examination and for which he operated with the accident in which the plaintiff was injured, is without merit. The plaintiff pleaded that her knee was injured in the accident and that Dr. Myers operated on it. Her testimony supported the allegations of her petition and clearly connects the examination and operation by Dr. Myers with the collision allegedly caused by the negligence of the defendant. The evidence was not inadmissible for any reason assigned, and the trial judge did not err in overruling the objection thereto and admitting such evidence.

■ Special ground 5 is based upon newly discovered evidence alleged to be material to the issues in the case. This ground was based upon affidavits to the effect that, some 16 years prior

to the collision in which the plaintiff alleged she was injured, the plaintiff sustained an injury to her right knee, which required hospitalization at that time and from which she continued to suffer. On the trial, the plaintiff testified: "I never had any trouble with my knee before, only one time. I was taking up fodder. I lived on a farm and I was taking up fodder and fell over a terrace and my knee was swollen a little. I went to a doctor and he felt there was pus in my knee and I went to the hospital and he taken a needle and drawed that pus out, and I have never had no more trouble with it since. That was 16 years ago. I never had any trouble with it since he put the needle in my knee, other than since this wreck." Part of the affidavits in question tended to show that the plaintiff had trouble with her knee some 16 years prior to the trial, and that she went to the hospital with the injury and was on crutches for some six months and until she moved from the community. Other affidavits were to the effect that, about a year prior to the accident, the plaintiff was limping and showed her knee to a neighbor, and that it was swollen and had a large scar on it, and that the plaintiff said at that time she had injured her knee several years ago. This ground of the motion was supported by supporting affidavits and affidavits from defendant's attorneys to the effect that they did not know of the prior injury to the plaintiff's knee until she testified on the trial in the court below with reference to it.

The trial judge did not err in overruling special ground 5 of the amended motion for new trial. The effect of the new evidence would be to impeach the testimony of the plaintiff that she had not had any trouble with her knee prior to the collision since the doctor treated her at the time of the first injury to her knee some 16 years ago. "There are literally hundreds of decisions which hold that newly discovered evidence which is merely impeaching in its character is not a good ground for a new trial." *Lemming* v. *State*, 61 *Ga. App.* 605 (7 S. E. 2d, 42). Moreover, "Newly discovered evidence is a discretionary ground for a new trial, and a judgment overruling a motion for a new trial based thereon will not, in the absence of abuse, be disturbed." *Loomis* v. *State*, 78 *Ga. App.* 336 (13) (51 S. E. 2d, 33). The plaintiff in error insists that the newly discovered

evidence, to the effect that in May, 1949, the plaintiff "was hobbling along when she walked," and that in February, 1950, the plaintiff's right knee "was swollen and had a large scar about two inches long, . . and she was limping," is not merely cumulative or impeaching in its character, but that it relates to new and material facts. This contention cannot be sustained. The extent and cause of the plaintiff's alleged injury to her knee was an issue on the trial, and the evidence in regard to it was conflicting. Both plaintiff and defendant placed in evidence medical testimony from physicians who had treated the plaintiff. Dr. Rufus Askew, a witness for the defendant, testified that he examined the plaintiff about a month after the accident, and that he made a very thorough examination; that she stated that, several hours after the accident, she began to have some pain in both knees; and that she told him that she had been in an accident on June 25, 1951, when a car in which she was riding was sideswiped by a passing automobile and caused to crash into a truck. He further testified: "She did complain of both knees. She said it got to hurting that night after the accident. I did make an examination of both knees and they were normal. . . She could walk with no limp of any kind, [without] any difficulty at all, because she was followed by me from my office to the examination room which is further than the length of this room, and she did not walk with any difficulty whatsoever. . . I say that on July 27, my examination did not show any injury to the cartilage, nothing that would require the removal of the cartilage. . . I would say that in September [if] she was examined and found to have a torn cartilage, it occurred after July 27th, the tearing of the cartilage did. In my opinion it could not have happened prior to the time of my examination." From the evidence in the record in the case, it appears that the extent and cause of the injury to the plaintiff's knee was one of the issues on the trial, and that the evidence with reference thereto was conflicting. The alleged newly discovered evidence is merely cumulative or impeaching in its nature and does not require a reversal of the judgment of the trial judge overruling a ground of the motion for a new trial based on such newly discovered evidence. In this connection, see *Macon & Birmingham Ry. Co. v. Ross*, 133 *Ga.* 83 (65 S. E. 146). Also

see *Brand* v. *City of Lawrenceville,* 64 *Ga. App.* 357, 359 (13 S. E. 2d, 214), and citations; *Giles* v. *Poppell,* 61 *Ga. App.* 79, 81 (5 S. E. 2d, 710).

The verdict is supported by the evidence; no error of law appears; and the trial judge did not err in overruling the amended motion for a new trial.

*Judgment affirmed. Worrill, J., concurs. Felton, J., concurs specially.*

FELTON, J., concurring specially. I concur in the judgment for the reason that the trial judge was authorized to find that the plaintiff in error did not make a sufficient showing as to diligence. He shows no reason why he could not have elicited the desired testimony from the physician whom he employed to examine the plaintiff and who testified in person at the trial. There is no showing that the plaintiff's physician, who testified by deposition, would now testify differently.

ON MOTION FOR REHEARING.

The movant contends that this court has overlooked the fact that the newly discovered evidence, on which a ground of his motion for a new trial is based, was uncontroverted, and also has overlooked the decision in *Matthews* v. *Grace,* 199 *Ga.* 400 (34 S. E. 2d, 454). Regardless of its truth, newly discovered evidence which is merely cumulative or impeaching in its character is not a ground for a new trial. Code, § 70-204. The *Matthews* case is distinguishable from this case and is not controlling here, because in that case it appeared that the newly discovered evidence relied upon was not cumulative, and there was a sufficient showing of diligence on the part of counsel for the movant.

The movant further contends that the court has overlooked the following definition of cumulative evidence, as stated in *Thomas* v. *State,* 52 *Ga.* 509: "To make a case of cumulative evidence, it must be not only on a point principally controverted at the trial, but a point on which the party seeking the new trial produced evidence." The movant asserts that "the only evidence adduced on the trial with respect to the prior injury to plaintiff's knee was testimony of the plaintiff herself given on direct examination," and that "defendant did not offer any evidence whatsoever with respect to the prior injury."

Dr. Rufus Askew was called as a witness for the defendant,

and he testified that he made an examination of Mrs. Worley at the request of the defendant. In addition to the parts of his testimony set out in the opinion in this case, the following appears in the brief of evidence as the substance of his testimony: "I did make an examination of both knees and they were normal. I did not find any evidence of any stiffness, swelling, discoloration or bluishness. . . You ask me, suppose a woman of the size of Mrs. Worley, 195 pounds, 16 years ago had an injury to her knee the type of which you don't know but that you know a doctor, so she testified, stuck a needle and removed some fluid or calcium or something from it, that in my opinion could a definite thickening of the ligament on the internal side of her knee have resulted from that injury 16 years before. Well, it could have but it is rare even then. It would certainly be much more likely to occur from something several years ago, and I think it would be totally impossible for it to occur from something a month and two days old, but it is rare for it to occur. from something several years old. . . As a result of my examination of Mrs. Worley's knee on July 27th, 1951, I am perfectly willing to swear upon my word of honor that she did not have a tear or any possibility of any tear or any sign or symptom of any tear of a cartilage in her knee. . . I am positive that she did not have any sign or symptom, she did not have even the slightest, not even anything to make one even wonder, you wouldn't even suspect it, you wouldn't even hesitate one moment in thinking that she had a torn cartilage."

Following the testimony of Dr. Askew, Mrs. Worley was recalled by the defendant, and, on cross-examination by the defendant, testified in part as follows: "I lived at Monroe, Georgia, before I came to Atlanta. I lived there one year. My name then was Mary Worley. I lived there it was five years in August. Sixteen years ago I was living at Lula, Georgia, on a farm. My name was Mary Worley then. I have been married twice. My name before I married Mr. Worley was Mary Harbin, and my maiden name was Mary Miller. Nineteen years ago I was living at Lula, Georgia, when I hurt my knee. I was living at Crawford, below Athens, when I had an automobile accident some several years ago. . . I did not have a knee injury then nor a leg injury. . . This was in

1934. . . The only injury to my leg before this was 16 years ago at Lula. Dr. Jolley at Homer operated on me then. He lived over there about Homer somewhere, Homer, Georgia."

It cannot be said that the defendant did not offer any evidence whatsoever with respect to the plaintiff's prior injury. It appears that the defendant took the position on the trial that the plaintiff had sustained no injuries to or disability of her knee, and sought to maintain such a position even when faced with the plaintiff's admission of an injury sixteen years before the trial. If the plaintiff's knee was normal and not disabled one month after the collision on which the suit was based, as stated by Dr. Askew, then neither the collision nor the previous injury had anything to do with the injury on account of which the plaintiff sought recovery of damages, and in this respect the defendant's evidence was strongly in conflict with the evidence adduced by the plaintiff. The same is true of the newly discovered evidence relied upon as a ground for a new trial, and hence it is merely cumulative and impeaching in its nature.

Moreover, the evidence above stated has some bearing upon the showing of diligence, on the part of the movant and his counsel, in discovering the new evidence. The only action which appears to have been taken to determine whether the plaintiff had a prior injury was to examine both of the plaintiff's physicians by deposition; "neither made any statement that would indicate that her knee had been injured prior to the time of the accident on which the above case is predicated." It does not appear that any inquiry was made of them concerning a prior injury. And, if the plaintiff had "a large scar about two inches long" on her right knee in 1950, as sworn to in the affidavit made by Mrs. Hassie Williams, such a scar should have been sufficient to put the defendant on notice, through Dr. Askew, who conducted a thorough examination of the plaintiff's knees on July 27, 1951, that the plaintiff had received a previous injury. It does not appear that any inquiry was made of the plaintiff herself as to her having sustained a prior injury to her knee. When the movant and his counsel, on the trial of the case, learned of the prior injury and of where it occurred, they made no motion for a continuance or a suspension of the trial (See *Monday* v. *State*, 32 *Ga.* 672 (7); *Bray* v. *Freeman*, 32 *Ga. App.* 99, 122

S. E. 623), but instead chose to risk a verdict. The court was authorized to find that the movant and his counsel could have discovered the new evidence by the exercise of slight diligence; and that, if the movant was surprised by the plaintiff's admission of her prior injury, he could not take his chances of winning a verdict and then obtain a new trial on newly discovered evidence under the circumstances as here disclosed.

*Accordingly, the motion for a rehearing is denied.*