## DOYAL *vs.* THE STATE OF GEORGIA.*

1. After the trial of a cause by the jury and the return of a verdict of guilty, and the refusal of a new trial by the circuit court, and the affirmance of that judgment by this court, the grounds of the second motion for a new trial will be scrutinized closely, and must be laid in the very foundations of the purity of jury trial, to authorize the grant of such an application.

2. The scrutiny will be closer by this court, and its power exercised with more hesitation when the presiding judge has refused to interfere with the verdict, on the ground of the disqualification of a juror.

3. But when the facts show that five respectable and disinterested witnesses of unimpeachable character, resident in a county other than that of the venue of the crime and the trial, swear positively that one of the jury, which tried and convicted the prisoner and sentenced him to be hanged, told each of them beforehand that if he got on the jury, he would hang the accused, and when this statement was made, not to all at one time, which might have been under the influence of horror of the crime, and not made with deliberate ill-will, but to two, on one occasion, and to each of the others separately, at different times and on different occasions, and when the same juror afterwards said, in the hearing of others, that the city of Griffin was prosecuting the case, there was big money in it, and he could make a pile out of it; and when the same juror was induced by threats of one of the counsel for the prosecution to swear to an affidavit exculpating himself from having made the statements so testified to by these several respectable witnesses, being under charges of forgery and subornation of false swearing at Griffin, in Spalding county, and at Jonesboro, in Clayton county, disconnected with this murder case, by which threats he was induced to believe that his trial in Griffin would be prejudiced unless he so swore, and when his denial of the statements of said respectable witnesses was, in one affidavit he made, simply that he could not deny them positively, but had no recollection of them, and that denial, induced by counsel, was positive, and when due diligence was manifested by counsel in moving on these extraordinary grounds, and no time was lost in bringing the facts before the superior court so soon as discovered:

*Held*, that conviction for murder and sentence of death on the verdict of a juror so utterly destitute of truth and uprightness of character, would shock the conscience of civilization, and soil the purity of jury trial; and no matter how heinous the crime com-

*No full reports or opinions are published in the following cases, under the provisions of the act of March 2, 1875. (Rep.)

mitted, the preservation of that purity is of more consequence than the speedy punishment of any one man for any one offense, and public policy, as well as individual right, demand a new trial. Code, §§3718, 3719, 3721, 4997, 5174.

Judgment reversed.

March 18, 1884. (Head-notes by the court.)

JACKSON, Chief Justice.

[Doyal was tried for murder and convicted. He moved for a new trial; it was refused; he excepted, and the judgment of the court below was affirmed. (See 70 *Ga.*, 134.) After the judgment of the Supreme Court had been made the judgment of the superior court, defendant made an extraordinary motion for a new trial, on substantially the following state of facts: One of the jurors, C. H. Wiggers, was not impartial, and had wilfully concealed this fact for the purpose of carrying out his design of convicting and causing the hanging of defendant, as expressed by him. Five witnesses testified that, at different times before the trial, the juror, Wiggers, had said, in effect, that Doyal ought to be hung, and if he (the juror) was selected on the jury to try the case, he would hang him. One of these witnesses testified that Wiggers was reminded that he had been summoned as a juror and ought not to speak in that way, and that he replied, that he "did not give a damn;" that if he got on the jury, he would hang Doyal. Two other of these witnesses testified that he had said to them that he knew about the case. These witnesses resided in a county other than that of the venue of the crime, and their respectable characters and reputation for veracity were sustained by affidavits of other witnesses. Still another witness made affidavit that, in her presence, the attention of Wiggers was called, with particularity as to time and place, to the fact that, just after having been summoned as a juror, he had said, "that if he, Wiggers, could manage to get on the jury, he would hang Doyal, and that the city of Griffin was able to pay, and had the cash, and if he

could get on the jury, he could make a pile of money out of it."

This is the same juror to whom Wyley Patrick, father of the mayor of Griffin, spoke, after his selection as a juror to try the case, which was made a ground of the former motion for new trial. He is also the juror who complained of being sick during the trial, and requested permission to remain in the jury room while the others went out for a walk. Affidavits of defendant and his attorneys were introduced to show ignorance of the facts, and that this motion was made at the first term after their discovery.

The state made a counter-showing, in brief, as follows: Three of the persons, whose affidavits are used by defendant, have been accessible, one living within ten or twelve miles of Griffin, the place of the trial, and being frequently there, and one having been a client of counsel for defendant and in frequent communication with him. The affidavits of nine of the jurors who served on the former trial were introduced, to the effect that they did not see or hear Wiggers do anything unbecoming an upright juror; that he never influenced, or tried to influence, any other juror, so far as affiants knew or believed; that, upon the first expression of opinion after going into the jury room, nine of the jurors favored a conviction, and three favored a recommendation of life imprisonment; that, after discussing the matter, all of the jury voluntarily and freely agreed to the verdict of guilty. Two of the jury named the three who favored a recommendation as not including Wiggers; another thought Wiggers was one of the three. Wiggers made affidavit that he entered upon the trial in a state of impartiality and without bias or prejudice; that he did not see the crime committed, and Ward never heard any of the testimony under oath or otherwise; that he had no recollection of having made the statements attributed to him by the witnesses for the defendant as to hanging him; that, if he said anything of the sort, it was from what he heard or saw in the newspaper; that his feelings were not

adverse to defendant, but rather the contrary, on account of his knowledge of defendant's family and friendly relations with them; that he hesitated about agreeing to the verdict, and preferred a verdict of manslaughter, and agreed to it solely from his conscientious convictions as a juror.

*R. T. Daniel, Esq.*, made affidavit to a conversation with Wiggers, in which he made substantially the statements just above set out, and denied making the statements attributed to him, but declined at the time to make affidavit to those facts, on the ground that his counsel had advised him not to do so, or to have anything to do with it.

The defendant, in rebuttal, showed that Wiggers was under two indictments in Clayton county for forgery and one for subornation of perjury; that he was under two indictments for like offenses in Spalding county; and that he was in jail at the time he made the exculpatory affidavit; that he objected to making it, saying that his counsel had advised him not to do so, and he did not wish to make it, as his recollection was indistinct as to statements which he had made; that F. D. Dismuke, Esq., of counsel for the state, insisted upon his signing it, telling him that his counsel had sent him word to make the affidavit; and becoming angry, told him, "If you hear it thunder, don't you blame me for it;" that it would do defendant's case in Spalding county (where Dismuke resided) no good; and Wiggers understood from this that his case would be prejudiced, unless he made the affidavit, which he finally did. He made still another affidavit, setting out these facts for defendant, on the hearing of the motion.

*John I. Hall, Esq.*, made an affidavit, explaining his position in the matter, in brief, as follows: He was of counsel for Wiggers in his criminal cases. Being satisfied that if Wiggers should give an affidavit conflicting with that of the other witnesses, an effort would be made to indict him for perjury, and being further satisfied that it was unwise for Wiggers to complicate his troubles, after

consulting with other counsel representing him, deponent advised him not to make any affidavit voluntarily, but if he was brought before the judge, to tell the truth. Subsequently he was shown a telegram from Mr. Dismuke that Wiggers had refused to sign, because deponent had told him not to do so, and not liking to have his advice thus used, deponent wrote to one of his associates at Jonesboro tnat he withdrew any advice he had given and left defendant to act for himself, if he were willing to take the risk. This letter, however, did not reach his associate until after the affidavit was given to Mr. Dismuke.

*F. D. Dismuke, Esq.*, made an affidavit, to the effect that he wrote out an affidavit containing what Wiggers said were the facts ; that Wiggers declined to sign it, on the ground that his counsel (Judge Hall) had advised him not to do so; that deponent had been told by the judge of the circuit and the solicitor general, that Judge Hall had written withdrawing his advice, and stating that Wiggers could sign it if he chose to do so, and upon this information, he so informed Wiggers; that the latter suggested that deponent bring his local counsel to the jail for consultation, but only one of them could be found, and he went to the jail; that after some consultation, Wiggers said he would sign; that deponent went to get the clerk to attest the signature, and upon his return, Wiggers declined to sign ; that it was then he made use of the expressions as to the consequences to Wiggers, and started away, but was re-called by Wiggers for the purpose of signing.

The motion was overruled, and defendant excepted.]