## PULLIAM *v.* THE STATE.

710

No. 15237.  SEPTEMBER 7, 1945.

*C. H. Dalton,* for plaintiff in error.

*T. Grady Head, attorney-general, J. H. Paschall, solicitor-general,* and *L. C. Groves, assistant attorney-general,* contra.

ATKINSON, Justice.  (After stating the foregoing facts.)  ■  In the first ground of the motion it is set out that, on Friday before the fire on Monday, J. C. Kay, the sheriff of Gordon county, had delivered to the accused the following letter: "Mark:  Arthur Washington a negro swore a warrant out for you about an automobile wreck.  Bring someone to sign your bond.  Don't think it

will amount to anything. Coley." This letter was taken from him by someone from the State investigator's office whose name he did not know, after he had been taken to the jail in Atlanta, and he could never locate the letter or anyone who knew anything about it until after the trial. Subsequently the letter was located in the files of S. W. Roper, an investigator for the State. It is insisted by the accused that, having located this letter, it is newly discovered evidence that will require the grant of a new trial, for the reason that it will be used to explain certain damaging testimony used against him on his trial. He asserts that the evidence showed that, when he was arrested while working at a sawmill several miles from his home, he inquired of the sheriff making the arrest why he was being arrested, to which the sheriff answered, "Your house was burned and some of your folks," to which the accused made no reply and asked no questions. And on the way to jail, and after they had traveled several miles, the accused remarked to the sheriff, "I think as much of my family as any damn man;" and this was the only statement that the accused made at that time about what had happened. In his motion the accused alleges: "That on account of being deprived of said note he could not show the trial jury why he said very little when arrested, for he knew a warrant was sworn out against him when the officers came for him; that to deprive him of said note prevented him from having evidence which would have been convincing in its nature and then shown to the trial jury his trend of mind, thinking that was what he was then being arrested on instead of another charge which he knew nothing of at all; that said note was material evidence for him in rebutting the evidence then offered by the State."

We can see no merit in this ground as an extraordinary motion for new trial based on newly discovered evidence. Upon his arrest he was advised by the arresting officer that he was being arrested because "your house was burned and some of your folks." In view of this statement it is inconceivable that by producing the letter from the other sheriff to the effect there was a warrant for his arrest growing out of an automobile wreck, the jury would account for his statement and lack of statements while being brought to jail, on the theory that the accused thought he was being arrested for the automobile wreck. There is no connection or similarity

between what was said to him as the cause of his arrest, to wit, "Your house was burned and some of your folks," and the contents of the letter referring to an automobile wreck. Moreover, by the exercise of proper diligence the accused could have subpœnaed Sheriff Kay, who wrote the letter, and produced evidence by him that would have covered the same facts as could be accomplished by the letter. An extraordinary motion for new trial upon grounds of newly discovered evidence is addressed to the sound discretion of the trial judge, and a refusal to grant the motion will not be reversed unless his discretion is abused. If it is not reasonably apparent to the judicial mind that the new facts would probably produce a different verdict, a new trial should not be ordered. Code, § 70-303; *Brown* v. *State,* 141 *Ga.* 783 (82 S. E. 238).

■ The second ground of the extraordinary motion is based upon the fact that during the trial of the accused for murder the State produced testimony as one of the motives for the crime, to the effect that he would collect $2400 life insurance. While the accused was tried for the murder of his wife, the evidence disclosed that at the same time his wife was killed, either by cutting or burning, five of his children were also burned to death, and that he was the beneficiary in life-insurance policies on three of his deceased children. At the trial an official of the insurance company, T. W. Kenemer, testified that under the terms of the policies the accused was the beneficiary in the total sum of $2400. Subsequently in 1944 suits upon the policies were instituted, and it was then determined that there was no liability under the policies at the date of death of the children. On this subject the record is voluminous, and the exact reason for the non-existence of liability and why T. W. Kenemer thought there was a $2400 liability need not be herein recited, but suffice it to say that it is now admitted in this proceeding by both the State and the accused that the insurance policies were not enforceable contracts at the date of the death of the children. In one of these suits the deposition of T. W. Kenemer, the official of the insurance company who had testified in the murder case that the accused was the beneficiary under the policies to the extent of $2400, was taken; and he testified in substance that at the time of the murder trial he in good faith thought the policies for $2400 good and binding on the insurance company, but after the civil suits were filed the insurance com-

panies' attorney had discovered that under the terms of the policies there was no liability under either. ˙ This witness further testified that, until he was so advised by the attorney, he in good faith thought and believed that his testimony before the jury on the murder charge, as to the insurance, was correct. It is now insisted by the accused that this fact of there being no enforceable contract ˙ under the insurance policies is such newly discovered evidence as would demand the grant of a new trial.

In approaching a determination of the question here presented, it must be borne in mind that the issue is not whether the insurance policies were valid or invalid, but the material question to be determined is what was the state of mind of the accused at the time of the homicide as to whether he was the beneficiary under these policies. If he believed himself to be the beneficiary, the jury might consider this as a motive. *Johnson* v. *State,* 128 *Ga.* 71 (3) (57 S. E. 84) ; *Johnson* v. *State,* 130 *Ga.* 22 (2) (60 S. E. 158) ; 40 C. J. S. p. 1167, § 235. The question of the presence or absence of motive is not necessarily determined by the jury on the correctness of a conclusion drawn by the accused from a state ˙ of facts, but the jury may ascribe as 'a motive for a crime a belief or conclusion which is erroneous and based upon his misconception of facts. Irrespective of whether these policies were valid or invalid, in this extraordinary motion no evidence is produced which would establish that the accused was aware at the time of the homicide that these policies were invalid. In the murder trial it was shown that he procured the policies, had himself nominated as beneficiary, paid the premiums, and paid the last premium under circumstances indicating an attempt to conceal his identity. as the person paying the premium. Approximately two years after the homicide, suits on the policies were filed by the accused, and it was then that he learned, for the first time, that the policies were not enforceable.

Such evidence would not be sufficient to authorize this court to hold that the trial judge abused his discretion in overruling the extraordinary ·motion for new trial.

*Judgment affirmed. All the Justices concur, except Head, J., disqualified.*