## WILLIAMS *v.* GEORGIA.

No. 412. Argued April 18, 1955.—Decided June 6, 1955.

By invitation of the Court, 348 U. S. 957, *Eugene Gressman* argued the cause and filed a brief, as *amicus curiae,* in support of petitioner. *Carter Goode* submitted on brief for petitioner.

*E. Freeman Leverett* and *Robert H. Hall,* Assistant Attorneys General of Georgia, argued the cause for respondent. With them on the brief was *Eugene Cook,* Attorney General.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The Court has here under review the decision of a state court rejecting a claim of infirmity in a conviction for murder based on a constitutional ground raised for the first time in an extraordinary proceeding after the conviction had been affirmed on appeal. Respect for the State's administration of criminal justice requires a detailed narrative of the procedural course of this litigation and an adequate consideration of the legal factors relevant to our disposition.

Petitioner, a Negro, was convicted in Fulton County, Georgia, of the murder of a white man and sentenced to death. According to the allegations before us, the petit jury which convicted him was selected in the following manner:

On February 18, 1953, a judge of the Fulton County Superior Court selected from a box the names of prospective jurors. The names of white persons were on white tickets and the names of Negroes were on yellow tickets. The tickets were handed to a deputy sheriff, who in turn gave them to a deputy clerk for listing. The named jurors were subsequently summoned, some were excused, and the remaining 120 were available for the ten panels of twelve jurors each to serve in the trial of civil and criminal cases in the Fulton County Superior Court for the week of March 9, 1953. Of the 120 jurors, four were Negroes, and all four were assigned to the criminal docket.

On March 10, 1953, a panel of 48 of the 120 jurors was "put upon" Williams at his trial. Thirteen jurors, includ-

ing three of the four Negroes, were excused for cause. The State peremptorily challenged the fourth Negro, so that no Negroes served on the jury of twelve which was finally selected to try Williams.

The trial, which immediately followed the selection of the jury, lasted one day. Twenty-three witnesses appeared against Williams. His only defense was a short unsworn statement to the effect that he had not committed the crime and that he had been "afraid" when he signed the written confession introduced against him.

Williams' court-appointed attorney filed a formal motion for new trial on March 27, 1953, and a more detailed amendment to the motion on June 29, 1953. The motion was overruled, and an appeal to the Georgia Supreme Court followed. On October 14, 1953, that court affirmed the judgment. 210 Ga. 207, 78 S. E. 2d 521.

On December 1, 1953, Williams' counsel filed in the trial court an extraordinary motion for new trial under Ga. Code Ann., § 70–303.[1] In this motion he alleged for the first time that Williams had been denied equal protection of the laws under the Fourteenth Amendment to the United States Constitution by the manner in which the petit jury had been selected, organized, impaneled and challenged. An affidavit by Williams accompanied the motion, stating that at the time of trial he had no knowledge of the methods used to select the jury. A similar affidavit by his counsel stated further that "the same

---

[1] "In case of a motion for a new trial made after the adjournment of the court, some good reason must be shown why the motion was not made during the term, which shall be judged of by the court. In all such cases, 20 days' notice shall be given to the opposite party. Whenever a motion for a new trial shall have been made at the term of trial in any criminal case and overruled, or when a motion for a new trial has not been made at such term, no motion for a new trial from the same verdict shall be made or received, unless the same is an extraordinary motion or case, and but one such extraordinary motion shall be made or allowed."

could not have been discovered by him [the counsel] in the exercise of ordinary diligence." The law partner of Williams' counsel submitted a third affidavit to the effect that he had taken no part in the trial or in its preparation.

On January 18, 1954, the trial court dismissed the extraordinary motion for new trial. An appeal was taken to the Georgia Supreme Court. In the appeal, reliance was placed almost exclusively upon the case of *Avery* v. *Georgia*, 345 U. S. 559, for the claim that Williams had been denied equal protection of the laws. The pertinence of that case to this turns on the time sequence in the two cases[2] as well as on the relevant substantive facts.

Avery was convicted of rape on September 20, 1951, in Fulton County, Georgia—the same county in which Williams was tried a year and a half later. Avery's petit jury was drawn with yellow and white tickets, precisely in the manner used later in the case of Williams. In Avery's case, no Negroes appeared on the list of 60 jurors put upon him at the trial, whereas here, four Negroes appeared on the list of 120 jurors from which Williams' jury was selected. Avery, however, challenged the array when the jury was put upon him; Williams did not. Avery's challenge was overruled, and after trial he appealed on the ground of discrimination in the selection of the jury. The Georgia Supreme Court disapproved of the use of yellow and white tickets but affirmed the judgment on the ground that no discrimination was actually shown.[3]

---

[2] See Appendix, *post*, p. 392, for table comparing the dates in the two cases.

[3] The court said: "And while the statute does not say so, its manifest intention is that the tickets shall be of uniform size and color, so as to make discrimination impossible in the drawing of jurors; and, where not so done, this is prima facie evidence of discrimination, and, if nothing else appeared, would require a reversal. In this case, however, it is not charged or contended that any discrimination was practiced in drawing the challenged jurors; and the judge who drew them, as a witness for the accused, testified there was in fact

Certiorari in the *Avery* case was filed in this Court on July 28, 1952, nine weeks before the alleged murder in the *Williams* case. The ground, as here, was that the use of different-colored tickets for whites and Negroes deprived the defendant of equal protection of the laws. Avery's petition for certiorari was granted March 9, 1953, the day before the petit jury was put upon Williams. This Court reversed the *Avery* case on May 25, 1953, holding that Avery had made out a prima facie case of an unconstitutional discrimination by showing the use of different-colored tickets which the State had not rebutted.

While this Court's decision in the *Avery* case was thus rendered over two months after Williams' trial, it came a month before the amendment to his formal motion for new trial. Yet Williams' counsel did not rely upon the ground raised by the *Avery* decision until some six months later in his extraordinary motion for new trial.

As already stated, the extraordinary motion was dismissed by the trial court, and Williams again appealed to the Georgia Supreme Court. That court affirmed the dismissal of the extraordinary motion. The court concluded that Williams, having failed to challenge the array when put upon him, had waived any objections to the jury's selection. The affidavits of Williams, his counsel, and his counsel's partner were deemed insufficient to excuse Williams' failure to challenge the array at the outset of the trial.

The court did not rest on this consideration. It urged that the facts inherent in the case contradicted the affidavits. The court said that its own decision in the *Avery*

none. Therefore, the practice of placing the names of white and colored jurors in the jury box on tickets of different colors did no harm in this instance, and consequently furnished no sufficient objection to the jurors challenged by the accused." 209 Ga. 116, 124, 70 S. E. 2d 716, 722.

case, prior to the Williams trial, had fully set out the practice of using different-colored tickets in the selection of juries. "Due diligence would certainly have required the defendant and his attorney to make themselves familiar with the opinions of this court on the question now raised. It follows that, for this reason, the motion for new trial was not sufficient as an extraordinary motion for new trial." 210 Ga. 665, 668, 82 S. E. 2d 217, 219.

In view of the entanglement of this case with our decision in *Avery,* we granted certiorari. 348 U. S. 854. Since the attorney appointed by the Georgia court advised the Clerk of this Court that he would not be in a position to present oral argument before this Court,[4] we appointed

[4] Counsel were informed that this case would be argued in this Court on March 3, 1955. On February 14, 1955, the Assistant Attorney General of Georgia wrote the Clerk of this Court that his office had been informed by Williams' counsel that "in all probability he would not participate in the oral argument of this case." The Clerk requested the attorney on February 18 to inform the Court of his plans. Under date of February 22, the attorney wrote to the Clerk as follows:

"Dear Sir:
"At the present time, it does not appear that I will be able to come to Washington to present oral argument in the above case. I have little or nothing to add to the brief.
"It is entirely agreeable, insofar as my agreement has any bearing, that the Attorney General's request in letter of February 14, 1955, [for permission to have two counsel present the State's case] be granted.
"I am assuming that if events take such a turn that I am able to come to Washington, I will be permitted to make a short oral argument. "Yours very truly,"

Under date of February 26, 1955, the Clerk sent the attorney the following letter:

"Dear Sir:
"I have spoken to the Chief Justice about the oral argument in this case and of the probability that you would not be present.
"He asked me to inform you that the Court would appreciate

*amicus curiae* to present argument on Williams' behalf. 348 U. S. 957.

In his brief on behalf of the State before the State Supreme Court, the Solicitor General of Fulton County had urged, *inter alia,* that there was no showing of a denial of equal protection in this case.[5] On oral argu-

your presenting oral argument if at all possible, particularly in view of the fact that this a capital case.        "Yours truly,"

The attorney replied under date of February 28:

"Dear Sir:

"I am in this position about this case: I originally entered the case by appointment, before our General Assembly enacted legislation authorizing the payment of appointed counsel from the Treasury of Fulton County. This petitioner has no money. His family have made contributions which have in part paid actual expenses. At the present time, they have only paid one-half the cost of printing the brief, and in this situation, it appears that any expense connected with a trip to Washington will be out-of-pocket to me.

"In addition, I am sole counsel in a suit in the Superior Court of Polk County, Georgia, on the calendar of that court for trial during the present week where my absence for any cause will have the result that payment of temporary alimony to my client will not be continued, which in turn, will have the result that I will lose the client.

"I have appeared in the Supreme Court of Georgia twice in this case and have pursued it thus far in the Supreme Court of the United States at a considerable sacrifice. It has been my intention to present oral argument if at all possible. In view of the foregoing, however, it simply does not seem that I will be able to. If I can try the case in Polk Superior Court tomorrow (March 1st), there remains a possibility that I will be able to appear before the Supreme Court. I do not, however, believe such will be the case and for that reason, I cannot plan on going to Washington.        "Very truly yours,"

Oral argument was subsequently reset for April 18, 1955.

[5] The Solicitor General said at the end of his brief: ". . . In the Avery Case no negro jurors were drawn and impanelled. In this case 4 negro jurors were actually impanelled and sworn for the trial

ment here, however, the State, with commendable regard for its responsibility, agreed that the use of yellow and white tickets in this case was, in light of this Court's decision in *Avery,* a denial of equal protection, so that a new trial would be required but for the failure to challenge the array. We need only add that it was the system of selection and the resulting danger of abuse which was struck down in *Avery* and not an actual showing of discrimination on the basis of comparative numbers of Negroes and whites on the jury lists. The question now before us, in view of the State's concession, is whether the ruling of the Georgia Supreme Court rests upon an adequate nonfederal ground, so that this Court is without jurisdiction to review the Georgia court.

A state procedural rule which forbids the raising of federal questions at late stages in the case, or by any

---

of this case. The mere fact that 3 were disqualified for cause and one was stricken peremptorily by the State would not suffice to show a course of systematic exclusion of negroes from the jury such as would amount to discrimination against the defendant in the trial of his case.

"We respectfully submit that the facts alleged in the extraordinary motion for a new trial do not make out a case showing denial of equal protection of the law or due process of law under the 14th Amendment to the Constitution of the United States, and that under the authorities cited above the judgment of the trial judge in dismissing the extraordinary motion should be affirmed."

The Attorney General of the State, who also filed a brief on behalf of the State, did not discuss the constitutional question except in his concluding paragraph:

"If, under the decision in the Avery case, there was in fact a discrimination against the movant in his trial, we do not say that he does not have some remedy at law but we do contend that the question is not ground for extraordinary motion for new trial and that the Court did not err in dismissing the same."

No other remedy was mentioned by the Georgia Supreme Court, and none has been called to our attention by the parties.

other than a prescribed method, has been recognized as a valid exercise of state power.[6]   The principle is clear enough.   But the unique aspects of the never-ending new cases that arise require its individual application to particular circumstances.   Thus, we would have a different question from that before us if the trial court had no power to consider Williams' constitutional objection at the belated time he raised it.   But, where a State allows questions of this sort to be raised at a late stage and be determined by its courts as a matter of discretion, we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in effect, an avoidance of the federal right.[7]   A state court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues raised in the same manner.

The Georgia courts have indicated many times that motions for new trial after verdict are not favored, and that extraordinary motions for new trial after final judgment are favored even less.[8]   But the Georgia statute provides for such motion,[9] and it has been granted in "exceptional" or "extraordinary" cases.   The general rule is that the granting or denying of an extraordinary motion

---

[6] See, e. g., Parker v. Illinois, 333 U. S. 571; Radio Station WOW, Inc. v. Johnson, 326 U. S. 120, 128; Pennsylvania R. Co. v. Illinois Brick Co., 297 U. S. 447, 462–463; Central Union Telephone Co. v. City of Edwardsville, 269 U. S. 190.

[7] Cf. Rogers v. Alabama, 192 U. S. 226; Abie State Bank v. Bryan, 282 U. S. 765, 772–773; Pierre v. Louisiana, 306 U. S. 354, 358; Urie v. Thompson, 337 U. S. 163, 172–173; Vandalia R. Co. v. Indiana ex rel. South Bend, 207 U. S. 359, 367.

[8] E. g., Parks v. Georgia, 204 Ga. 41, 48 S. E. 2d 837 (1948); Brown v. Georgia, 141 Ga. 783, 82 S. E. 238 (1914); Tyre v. Georgia, 38 Ga. App. 206, 143 S. E. 778 (1928).

[9] Ga. Code Ann., § 70–303.   See note 1, supra.

for new trial rests primarily in the discretion of the trial court, and the appellate court will not reverse except for a clear abuse of discretion.[10] In practice, however, the Georgia appellate courts have not hesitated to reverse and grant a new trial in exceptional cases. For example:

In *Wright* v. *Davis,* 184 Ga. 846, 193 S. E. 757 (1937), the defendant was sentenced to death, his motion for new trial was overruled, and the judgment was affirmed on appeal by the Georgia Supreme Court. Three months after the affirmance the defendant made an extraordinary motion for new trial on the ground that an ex-convict had obtained a seat on the jury by impersonating his father, whose name was properly on the jury list. The trial court denied the extraordinary motion. The Georgia Supreme Court granted mandamus and made it absolute. It said:

> "In the instant case we are of the opinion that the extraordinary motion for a new trial and the proffered amendment presented a state of facts which, standing without dispute, required as a matter of law that a new trial should be granted. . . .
>
> ". . . The verdict itself shows that the defendant was not benefited, as he received the extreme penalty, and it is clear that he was deprived of his right to have a jury composed entirely of upright men. Code, §§ 2–4502, 59–106. It will not do to speculate on whether the accused suffered actual injury, when so vital a right has been violated. There are some conditions from which injury will be presumed. . . ." (184 Ga., at 851, 853, 193 S. E., at 760.)

---

[10] *E. g., Patterson* v. *Georgia,* 208 Ga. 689, 69 S. E. 2d 84 (1952); *Pulliam* v. *Georgia,* 199 Ga. 709, 35 S. E. 2d 250 (1945); *Rogers* v. *Georgia,* 129 Ga. 589, 59 S. E. 288 (1907); *Echols* v. *Georgia,* 87 Ga. App. 565, 74 S. E. 2d 474 (1953); *Bivins* v. *McDonald,* 50 Ga. App. 299, 177 S. E. 829 (1934).

The court rejected the State's contention that the defendant had not shown due diligence in discovering the juror's disqualification.[11]

*Smith* v. *Georgia,* 2 Ga. App. 574, 59 S. E. 311 (1907), involved a conviction for arson. A motion for new trial was denied, the judgment was affirmed on appeal, and five months later the defendant filed an extraordinary motion for new trial on the ground that one of the jurors was related to the deceased wife of the prosecutor within the ninth degree, and several of the prosecutor's children continued the kinship by affinity. The trial court denied the motion, but the appellate court granted a new trial. It said:

> ". . . There is no higher purpose to be subserved in the administration of the criminal law than that every defendant shall be accorded a trial by jury, and jury trial is a mockery unless the jury be not only impartial but also beyond just suspicion of partiality. . . ." (2 Ga. App., at 578, 59 S. E., at 313.)

In answer to the State's contention that the defendant and his attorney had not shown due diligence in discovering the prohibited relationship, the court said that the trial judge had inquired into the question of relationship when the jury was impaneled, and then the court added this quotation from a Georgia Supreme Court opinion:

> ". . . 'Parties are not required to make searching investigation out of court to determine whether the jurors who are summoned are disqualified in their cases. Not only is such a duty not placed by the

---

[11] Cf. *Williams* v. *Georgia,* 12 Ga. App. 337, 77 S. E. 189 (1913), in which the presence on the jury of a juror previously convicted of an offense involving moral turpitude was deemed to warrant a new trial on a motion after verdict, as compared with an extraordinary motion after final judgment.

law upon parties and their counsel, but the contrary practice is to be encouraged, for obvious reasons.' "
(2 Ga. App., at 582, 59 S. E., at 315.)

In *Crawley* v. *Georgia*, 151 Ga. 818, 108 S. E. 238 (1921), four defendants were convicted of murder. Two were sentenced to death and two to life imprisonment. A motion for new trial was overruled, the judgment was affirmed on appeal, a motion for rehearing was denied, and a week later the defendants filed an extraordinary motion for new trial, which the trial court overruled. The Georgia Supreme Court reversed. The extraordinary motion showed that the wife of one juror was within the ninth degree of relationship to the wife of the murdered man. A new trial was granted even though the State submitted an affidavit by the juror that he did not know of the relationship at the time of the trial and therefore could not have been prejudiced.[12]

In *Doyal* v. *Georgia*, 73 Ga. 72 (1884), the defendant was convicted of murder. His motion for new trial was denied, and the judgment was affirmed on appeal. He filed an extraordinary motion for new trial on the ground that five witnesses were ready to testify that one of the jurors had said in effect before the trial that the defendant ought to be hung and that the juror would see to it if he got on the jury. The defendant and his attorney filed affidavits to the effect that they had been ignorant of the facts at the time of trial. Despite affidavits submitted

---

[12] Cf. the following cases in which new trials were granted on motion after verdict, as compared with an extraordinary motion after final judgment, because of a juror's disqualification. *Harris* v. *Georgia*, 188 Ga. 745, 4 S. E. 2d 651 (1939); *Ethridge* v. *Georgia*, 164 Ga. 53, 137 S. E. 784 (1927); *Currie* v. *Georgia*, 156 Ga. 85, 118 S. E. 724 (1923); *O'Berry* v. *Georgia*, 153 Ga. 644, 113 S. E. 2 (1922); *Merritt* v. *Georgia*, 152 Ga. 405, 110 S. E. 160 (1921); *Hubbard* v. *Georgia*, 5 Ga. App. 599, 63 S. E. 588 (1909); *Perrett* v. *Georgia*, 16 Ga. App. 587, 85 S. E. 820 (1915); *Cray* v. *Georgia*, 37 Ga. App. 371, 140 S. E. 402 (1927).

by the State showing the availability of three of the five witnesses at the time of trial, the Georgia Supreme Court granted a new trial.[13]

There are other cases of like tenor.[14]

All these cases (barring *Harris* v. *Georgia,* n. 14) involved objections to individual jurors, as contrasted with the objection to the whole panel in this case. But the two situations cannot be distinguished on this ground.

---

[13] Under Georgia practice, the headnotes to cases are written by the court. The headnote in this case said: *"Held,* that conviction for murder and sentence of death on the verdict of a juror so utterly destitute of truth and uprightness of character, would shock the conscience of civilization, and soil the purity of jury trial; and no matter how heinous the crime committed, the preservation of that purity is of more consequence than the speedy punishment of any one man for any one offense, and public policy, as well as individual right, demand a new trial."

In *Wallace* v. *Georgia,* 205 Ga. 751, 55 S. E. 2d 145 (1949), affidavits similar to those in the *Doyal* case were presented by the defendant, but the State introduced positive affidavits to the effect that no such statements by the juror had been made. The headnote written by the Georgia Supreme Court stated: "There was no manifest abuse of discretion by the trial judge in overruling [this] ground of the extraordinary motion for a new trial, based upon conflicting evidence as to the alleged disqualification of the juror therein referred to." (205 Ga., at 752, 55 S. E. 2d, at 146.)

[14] In *Bloodworth* v. *Georgia,* 161 Ga. 332, 334, 131 S. E. 80, 81 (1925), it was stated that in a prior trial defendant was granted a new trial on an extraordinary motion after final judgment because a juror was disqualified.

In *Harris* v. *Georgia,* 150 Ga. 680, 104 S. E. 902 (1920), the defendant was sentenced to death for murder, a motion for a new trial was denied, and the judgment was affirmed on appeal. An extraordinary motion for new trial was overruled by the trial court, but the State Supreme Court reversed. The ground of the reversal was that after the jury had informed the judge that they could not agree, a deputy sheriff gave them the judge's message that he could not help them further, and then the deputy added, "the judge would keep them locked up until they did make a verdict," after which a verdict was brought in.

Georgia has a rule, as the State Supreme Court noted in this case, that an objection to the whole panel must be made by way of a challenge to the array at the time the panel is put upon the defendant. *Cornelious* v. *Georgia,* 193 Ga. 25, 17 S. E. 2d 156 (1941); *Wilcoxon* v. *Aldredge,* 192 Ga. 634, 15 S. E. 2d 873 (1941); *Cumming* v. *Georgia,* 155 Ga. 346, 117 S. E. 378 (1923); *Lumpkin* v. *Georgia,* 152 Ga. 229, 109 S. E. 664 (1921).[15] But none of these cases declare that an extraordinary motion is not available *in a proper case* for granting a new trial when the objection is to the panel. On the contrary, several factors indicate that the trial judge and the appellate court have the same degree of discretion in the "array" cases as in cases involving individual jurors. *First:* There is also a rule in Georgia that an objection to an individual juror must be made at the trial by a challenge to the poll.[16]

---

[15] Some of these cases are not entirely clear. For example, *Lumpkin* stated that all objections to the impaneling of the grand jury should be made by challenge to the array before the indictment is found, where the illegality is known, or, if not known, by plea in abatement to the indictment; objections to "certain jurors" on the *trial* jury should be raised by a challenge to the juror when put upon the defendant. This rule is cited in *Cornelious* for the proposition that an objection to both grand and petit juries must be made by a challenge to the array before indictment or by plea in abatement before trial. In *Kato* v. *Georgia,* 33 Ga. App. 342, 126 S. E. 266 (1925), the grand jury rule was applied to individual grand jurors rather than to the panel, and the challenge was said to be one to the array. And in *Moon* v. *Georgia,* 68 Ga. 687 (1882), it was said that an objection to a single juror should be made by a challenge to the array. Cf. note 16, *infra.*

[16] *E. g., Fudge* v. *Georgia,* 190 Ga. 340, 9 S. E. 2d 259 (1940); *Bryan* v. *Georgia,* 124 Ga. 79, 52 S. E. 298 (1905); *Taylor* v. *Georgia,* 121 Ga. 348, 49 S. E. 303 (1904). In Georgia, challenges to the array go to the form and manner of making up the entire panel, whereas challenges to the poll are directed solely to the individual juror. See *Humphries* v. *Georgia,* 100 Ga. 260, 262, 28 S. E. 25, 26 (1897); *Mitchell* v. *Georgia,* 69 Ga. App. 771, 776, 26 S. E. 2d 663, 667 (1943).

But as the cases above demonstrate, this rule gives way in an exceptional case to the need for a new trial shown by extraordinary motion. It does not appear rational to deny that the rule as to challenges to the array is likewise not inflexible. *Second:* The opinion of the Georgia Supreme Court in this case supports this conclusion. If the trial court had no power to entertain the motion, it was immaterial whether the affidavits were faulty. Yet the Supreme Court felt called upon to question the reliability of the affidavits, concluding that Williams' counsel must have failed to use due diligence and "for this reason" the motion was "not sufficient." [17]

We conclude that the trial court and the State Supreme Court declined to grant Williams' motion though possessed of power to do so under state law. Since his motion was based upon a constitutional objection, and one the validity of which has in principle been sustained here, the discretionary decision to deny the motion does not deprive this Court of jurisdiction to find that the substantive issue is properly before us.

But the fact that we have jurisdiction does not compel us to exercise it. In *Patterson* v. *Alabama,* 294 U. S. 600, we remanded a case to the highest court of the State, even though that court had affirmed on state procedural grounds, because after that affirmance we had reversed on constitutional grounds a case having identical substantive facts. We said there:

> "While we must have proper regard to this ruling of the state court in relation to its appellate procedure, we cannot ignore the exceptional features of the present case. An important question under the Federal Constitution was involved, and, from that standpoint, the case did not stand alone. . . .

---

[17] 210 Ga. 665, 668, 82 S. E. 2d 217, 219.

". . . We are not satisfied that the court would have dealt with the case in the same way if it had determined the constitutional question as we have determined it. . . .

"We have frequently held that in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the state court may be free to act. We have said that to do this is not to review, in any proper sense of the term, the decision of the state court upon a non-federal question, but only to deal appropriately with a matter arising since its judgment and having a bearing upon the right disposition of the case. . . ." (294 U. S., at 605, 606, 607.)

In the instant case, there is an important factor which has intervened since the affirmance by the Georgia Supreme Court which impels us to remand for that court's further consideration. This is the acknowledgment by the State before this Court that, as a matter of substantive law, Williams has been deprived of his constitutional rights. The Solicitor General of Fulton County, it should be recalled, had urged before the Georgia Supreme Court that no denial of equal protection was involved, and that court may well have been influenced by the contention. Moreover, if there is another remedy open to Williams, as the Attorney General of the State intimated in his brief to the Georgia Supreme Court,

that court should have an opportunity to designate the appropriate remedy.[18]

The facts of this case are extraordinary, particularly in view of the use of yellow and white tickets by a judge of the Fulton County Superior Court almost a year after the State's own Supreme Court had condemned the practice in the *Avery* case. That life is at stake is of course another important factor in creating the extraordinary situation. The difference between capital and non-capital offenses is the basis of differentiation in law in diverse ways in which the distinction becomes relevant.[19] We think that orderly procedure requires a remand to the State Supreme Court for reconsideration of the case. Fair regard for the principles which the Georgia courts have enforced in numerous cases and for the constitutional commands binding on all courts compels us to reject the assumption that the courts of Georgia would allow this man to go to his death as the result of a conviction secured from a jury which the State admits was unconstitutionally impaneled. Cf. *Mooney* v. *Holohan,* 294 U. S. 103.

*Remanded.*

[For dissenting opinion of Mr. Justice Clark, see *post,* p. 393.]

[For dissenting opinion of Mr. Justice Minton, see *post,* p. 403.]

---

[18] Even if extraordinary motion is the appropriate remedy, local practice may require Williams to be put to his proof. The State, for purposes of presenting its legal arguments, has not disputed the facts alleged in the extraordinary motion, but there has not been a hearing on those facts or an admission of their truth.

[19] Cf. *Patterson* v. *Alabama, supra,* with *Betts* v. *Brady,* 316 U. S. 455.

## APPENDIX TO OPINION OF THE COURT.

| WILLIAMS CASE | AVERY CASE |
|---|---|
| | Sept. 20, 1951—Avery convicted. |
| | April 14, 1952—Georgia Supreme Court affirms. |
| | July 28, 1952—certiorari filed in this Court. |
| Oct. 4, 1952 — alleged murder occurs. | |
| Oct. 17, 1952—Williams arrested, placed in a line-up, confesses. | |
| Oct. 21, 1952—Williams indicted. | |
| Feb. 18, 1953 — jury panels chosen for trials during week of March 9th. | |
| | March 9, 1953—this Court grants certiorari. |
| March 10, 1953—jury put upon Williams, trial held, and verdict of guilty. | |
| March 11, 1953—sentenced. | |
| March 27, 1953—formal motion for new trial filed. | |
| | April 30, 1953—case argued in this Court. |
| | May 25, 1953—this Court reverses, holding jury selection unconstitutional. |
| June 29, 1953—amendment to motion for new trial filed; motion overruled. | |
| July 16, 1953—bill of exceptions filed. | |
| Oct. 14, 1953—Georgia Supreme Court affirms. | |
| Nov. 23, 1953—Williams again sentenced to death. | |
| Dec. 1, 1953—extraordinary motion for new trial filed. | |
| Jan. 18, 1954—trial court dismisses extraordinary motion. | |
| May 19, 1954—Georgia Supreme Court affirms. | |
| Oct. 18, 1954—this Court grants certiorari. | |

MR. JUSTICE CLARK, with whom MR. JUSTICE REED and MR. JUSTICE MINTON join, dissenting.

To borrow a phrase from Mr. Justice Holmes, the opinion of the Court "just won't wash." While I, too, am not deaf to the pleas of the condemned, I cannot ignore the long-established precedents of this Court. The proper course, as has always been followed here, is to recognize and honor reasonable state procedures as valid exercises of sovereign power. We have done so in hundreds of capital cases since I have been on the Court, and I do not think that even the sympathetic facts of this case should make us lose sight of the limitations on this Court's powers.

To see just how far the Court has "stretched" here, it is only necessary to compare today's majority opinion with *Patterson* v. *Alabama,* 294 U. S. 600, the decision relied on to support the Court's remand. In that case, Patterson and one Norris had been charged in a common indictment. Prior to trial, both interposed constitutional claims of systematic exclusion of Negroes from the jury. Patterson, however, failed to file his bill of exceptions within the time prescribed by state law. The Alabama Supreme Court decided the separate appeals on the same day, denying Norris' claim on the merits, *Norris* v. *State,* 229 Ala. 226, 156 So. 556, while dismissing Patterson's case as out of time. 229 Ala. 270, 156 So. 567. This Court thereafter reversed Norris' conviction. 294 U. S. 587. In *Patterson,* however, the Court was confronted with an independent and adequate state ground which presented an insuperable obstacle to reversal. Nevertheless, it was quite possible that had the Alabama court realized the validity of the objection it had overruled on the merits in *Norris,* it might have regarded the whole complexion of the case as different and chosen not to rest on a narrow procedural ground in *Patterson.* This Court,

therefore, remanded the case to the Alabama Supreme Court for reconsideration of its decision in the light of the important intervening factor.

Note the magnitude of the "important intervening factor" here and just how it changes the complexion of the case. The majority relies on the fact that the State "[o]n oral argument here . . . agreed that the use of yellow and white tickets in this case was, in light of this Court's decision in *Avery,* a denial of equal protection, so that a new trial would be required but for the failure to challenge the array." The Solicitor General of Fulton County, the Court reasons, "had urged [by brief] before the Georgia Supreme Court that no denial of equal protection was involved, and that court may well have been influenced by the contention."

The Solicitor General of Fulton County presented no oral argument here. Only the State Attorney General, whose sole contention before the Georgia court was that the "question [was] not ground for extraordinary motion for new trial," was represented before this Court. The majority's "important intervening factor," therefore, is that an Assistant Attorney General of Georgia has now expressed an opinion on a question his superior did not reach in his brief before the Georgia Supreme Court. Since good advocacy would dictate that the Attorney General argue this point before the Georgia court had he thought it substantial, I do not think his office underwent any great change of mind in the interim between that argument and this. On argument, after questioning on the point—which we note was not one of the questions he raised—the Assistant Attorney General stated only what the Attorney General's brief below had intimated. In any event, I am completely at a loss to understand what difference it makes what was argued in the Georgia Supreme Court or conceded here, since the Georgia

Supreme Court clearly stated that, but for the procedural objection, *Avery* would govern:

"Defendant in his motion sets forth a practice which has been condemned by this court and the Supreme Court of the United States. However, any question to be considered by this court must be raised at the time and in the manner required under the rules of law and practice and procedure in effect in this State." 210 Ga. 665, 669, 82 S. E. 2d 217, 219.

The majority's other ground for remand is even weaker, relying on a phrase from the Attorney General's brief before the Georgia court—"we do not say that he [Williams] does not have some remedy at law." The ground asserted is that in the light of this "intimat[ion]" of the Attorney General, Georgia's court "should have an opportunity to designate the appropriate remedy." If Williams has a remedy, he can certainly pursue it as well without this remand; and if he has no other state remedy, it is even clearer that nothing is to be gained by the Court's disposition of the case.

Another difference between this case and *Patterson* is at once evident. In *Patterson,* the Court, through Chief Justice Hughes, said:

"We are not convinced that the court, in the presence of such a determination of constitutional right, confronting the anomalous and grave situation which would be created by a reversal of the judgment against Norris, and an affirmance of the judgment of death in the companion case of Patterson, who had asserted the same right, . . . would have considered itself powerless to entertain the bill of exceptions or otherwise to provide appropriate relief. . . . At least *the state court should have an opportunity to examine its powers* in the light of the situation which

has now developed. We should not foreclose that opportunity." [1] (Italics supplied.) 294 U. S., at 606–607.

In this case, unlike *Patterson,* the Court determines the state law itself. We have always insisted that, if possible, state courts be permitted to decide difficult and uncertain questions of state law before the federal courts do so, even to the point of having the federal courts decline jurisdiction to await the State's ruling. Cf. *Burford* v. *Sun Oil Co.,* 319 U. S. 315. To me nothing could be clearer than that a state question arising in a case which is to be remanded to the state court should be left open for resolution by the State without the pressure of a decision by this Court.

Furthermore, I agree with MR. JUSTICE MINTON that the majority has misconstrued Georgia's law. As I read the state law, the decisions indicate that the Georgia courts have no power to hear and determine petitioner's extraordinary motion on the merits. Ever since *Jordan* v. *State,* 22 Ga. 545 (1857), the Georgia law has been that the defendant must challenge the array when the panel is "put upon" him and not thereafter. And since it is too late to raise such a challenge in a motion for new trial, *Moon* v. *State,* 68 Ga. 687 (1882), certainly the objection cannot be made in an extraordinary motion coming, as here, seven months after verdict. See also *Cumming* v.

---

[1] The Court in *Patterson* was more scrupulous about keeping its opinions on state procedure to itself. Here, the Court says:

"Fair regard . . . for the constitutional commands binding on all courts compels us to reject the assumption that the courts of Georgia would allow this man to go to his death as the result of a conviction secured from a jury which the State admits was unconstitutionally impaneled."

This characterization is especially unfortunate in view of the fact that the state court, with full knowledge of all the facts, has already refused to order a new trial. See page 403, *infra.*

*State,* 155 Ga. 346, 117 S. E. 2d 378 (1923). In fact, as late as 1941, Georgia's highest court rejected a claim of discrimination in the selection of jurors "for the reason that an objection of this kind should have been presented in a proper way at the trial, and upon failure to do so it is to be considered waived." *Wilcoxon* v. *Aldredge,* 192 Ga. 634, 637, 15 S. E. 2d 873, 876. This was a capital case, and it was conceded that the prisoner's claim had substantive validity. But even in those extreme circumstances the Georgia Supreme Court did not consider the objection available after trial.

The Georgia Court of Appeals has consistently taken the same position. In *Ivey* v. *State,* 4 Ga. App. 828, 831, 62 S. E. 565 (1908), and *Williams* v. *State,* 31 Ga. App. 173, 174, 120 S. E. 131, 132 (1923), it was held that "If he [defendant] does not challenge the array, no other method of complaint as to the deficiency of the panel is open to him."

In reaching the opposite conclusion, *i. e.,* that the Georgia courts have discretionary authority to consider the petitioner's untimely objection in the circumstances of this case, the majority relies on two factors. *First,* the Georgia court in the instant case, after holding that petitioner had waived his objection by failing to raise it at the proper time, went on to find that the proffered justification was inadequate as a matter of pleading and as a matter of fact. But it is difficult to see how this separately numbered alternative ground can impair the court's other decision that, excuse or no excuse, petitioner had waived his claim "once and for all." *Second,* it is urged that the Georgia courts frequently exercise their discretion in favor of untimely objections directed at individual jurors—"challenges to the poll" as they are called in Georgia. The majority cites no case, however, where such discretion was exercised on a challenge to the array, and not one of the majority's individual juror cases is men-

tioned, much less distinguished, in the Georgia court's opinion in this case. Since courts usually distinguish apparent conflicts, it is fair to assume that the Georgia court considered the two types of challenge to be governed by entirely different rules. This conclusion is buttressed both by the distinction drawn between these types under Georgia law and by the differing considerations controlling their allowance.

Challenges to the array are "directed to the whole group collectively for causes in the nature of irregularities in the form, manner and making up of the panel." Davis and Shulman, Georgia Practice and Procedure, p. 454. Challenges to the poll are "directed solely for objections which are inherent in the individual jurors," Georgia Practice and Procedure, *supra,* at 455. Circumstances require that challenges to the array be made before trial. If permitted thereafter—and upheld—the judgments in many, if not all, other cases tried before juries obtained from the same panel would be subject to like attack. For example, illegality in the array summoned for March 9, 1953, from which the *Williams* jury was selected, might result in the overturning of all verdicts returned in the county during their tenure. This would be both expensive and time-wasting, as well as disruptive of the proper administration of justice. Hence Georgia requires a challenge to be made before trial in order to give the judge an opportunity to correct the irregularity. On the other hand, a challenge to a petit juror or to the poll merely affects the one verdict of that jury of twelve rather than all the verdicts of the panel of one hundred and twenty.

The majority dwells on the extreme circumstances of this case, discusses in great detail the Georgia cases affording discretionary relief in less strong cases involving individual jurors, and warns that "we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in

effect, an avoidance of the federal right." Although I find it difficult to ascertain exactly what ground the majority could give for striking down the Georgia result, it is clear to me that no theory ever before accepted by this Court could lead to reversal.

It is elementary that this Court has no jurisdiction over a case here from a state court where there is an independent and adequate state ground supporting the conclusion reached below.[2] A purported state ground is not independent and adequate in two instances. *First,* where the circumstances give rise to an inference that the state court is guilty of an evasion—an interpretation of state law with the specific intent to deprive a litigant of a federal right.[3] *Second,* where the state law, honestly applied though it may be, and even dictated by the precedents, throws such obstacles in the way of enforcement of federal rights that it must be struck down as unreasonably interfering with the vindication of such rights.[4]

It is obvious that the Georgia court has not been guilty of "evasion." Although the Georgia court's interpretation of state law may not be free from doubt, it is not possible to say that the Georgia decision is without "fair support" in the previous cases.[5] I regard it also as note-

---

[2] Cf. the statement of the majority: "But the fact that we have jurisdiction does not compel us to exercise it."

[3] This charge upon the integrity of a State Supreme Court is so serious that this Court has restricted such findings to cases where the state court decision lacked "fair support" in the state law. See *Rogers* v. *Alabama,* 192 U. S. 226. Cf. *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 209.

[4] See *Davis* v. *Wechsler,* 263 U. S. 22; *Iowa-Des Moines National Bank* v. *Bennett,* 284 U. S. 239, 247. Cf. *Missouri* v. *Gehner,* 281 U. S. 313 (1930).

[5] The cases cited by the majority are not helpful here. In *Rogers* v. *Alabama,* 192 U. S. 226, the Alabama court struck a federal claim of discrimination on the ground that the pleading was prolix. The pleading was two pages in length. It goes without saying that the

worthy that Presiding Justice Wyatt wrote this opinion for the Georgia Supreme Court. It was he who, in the Georgia court's decision in *Avery,* said in dissent:

"I cannot agree with the ruling [as to discrimination] for the reason, in my opinion, that this practice is conclusive evidence of discrimination, and for that reason the case should be reversed." 209 Ga. 116, 131, 70 S. E. 2d 716, 726.

In this ruling he went further in protecting the integrity of the jury system than we ourselves thought necessary. Compare *Avery* v. *Georgia,* 345 U. S. 559, 562–563 (petitioner established "a prima facie case of discrimination" which the State failed to rebut). One who had so acted would hardly be attempting to evade the very federal right he had previously upheld so strongly.

---

State was evading the issue. In *Abie State Bank* v. *Bryan,* 282 U. S. 765, the bank's constitutional plea that conditions had so changed as to make a state statute confiscatory was stricken on grounds of estoppel, the bank having acquiesced in the regulation for several years. Chief Justice Hughes held that "earlier compliance . . . does not forfeit the right of protest . . . ." 282 U. S., at 776. In view of the changed circumstances, the state ground unreasonably interfered with the vindication of a federal right. In *Pierre* v. *Louisiana,* 306 U. S. 354, there was a timely objection, on federal grounds, to the systematic exclusion of Negroes from the grand jury list. This Court first rejected the State's claim that the illegal composition was harmless error, and then affirmed the power of this Court to make an independent investigation of the facts. In *Urie* v. *Thompson,* 337 U. S. 163, 172, Mr. Justice Rutledge in an FELA case held that, since the final judgment rule had prevented any earlier consideration by this Court, local practice rules could not bar this Court's consideration of "all substantial federal questions actually determined in earlier stages of the litigation." And in *Vandalia R. Co.* v. *Indiana 'ex rel. South Bend,* 207 U. S. 359, 367, Mr. Justice Brewer said, "Even if it be conceded that the conclusion of the Supreme Court of the State is not free from doubt, there is nothing to justify a suspicion that there was any intent to avoid the Federal questions. . . ." We agree that this is the test here.

Similarly, the Georgia procedure is not unduly burdensome. The majority concedes that "[a] state procedural rule which forbids the raising of federal questions at late stages in the case, or by any other than a prescribed method, has been recognized as a valid exercise of state power." Even if the majority could somehow strike down the Georgia court's holding that it lacked discretion, it is not enough to show that Georgia has the power and refuses to exercise it. There is no case to support the implication that the exercise of discretion against a federal right is, without more, an evasion. See *Brown* v. *Allen,* 344 U. S. 443, 484–486. Indeed, it would seem that there would have to be a withholding of discretion for the *purpose* of depriving Williams of a federal right. There is nothing even approaching that here.

A state court's decision cannot be overturned if any one of the grounds supporting it is independent and adequate. There is one ground here which appears so unassailable that the majority does not even attack it. Georgia law makes a showing of due diligence on the part of the movant a prerequisite to granting extraordinary motions for new trial. The state court in this case found that due diligence had not been properly pleaded, and that the facts of which the Georgia court could take notice conclusively demonstrated that diligence was indeed completely lacking.

On the first ground, there is clearly substantial support in the prior state decisions. Petitioner's attorney stated that "he did not know of the facts [establishing the constitutional claim] before the trial and before the verdict in said case, and that the same could not have been discovered by him in the exercise of ordinary diligence." It had been held in at least four prior Georgia decisions that such conclusory pleading of diligence was inadequate to support a motion for a new trial or an extraordinary action for the same. *Taylor* v. *State,* 132 Ga. 235, 63 S. E. 1116;

*King* v. *State,* 174 Ga. 432, 163 S. E. 168; *Redding* v. *State,* 183 Ga. 704, 189 S. E. 514; *Edge* v. *State,* 200 Ga. 257, 36 S. E. 2d 673.[6]

On the second ground, the Georgia opinion speaks for itself:

> "Furthermore, the facts and circumstances contradict the statements made in the affidavits. When the instant case came on for trial in Fulton Superior Court on March 10, 1953, the case of *Avery* v. *State* had been tried in the same county, and that case had been affirmed by this court on April 14, 1952, and was pending in the United States Supreme Court. . . . The opinion of this court affirming the lower court in the *Avery* case sets out fully the methods and practices employed in the selection and empaneling of juries in Fulton County, including the practice of putting the names of white jurors on white slips of paper and the names of colored jurors on yellow slips of paper. Due diligence would certainly have required the defendant and his attorney to make themselves familiar with the opinions of this court on the question now raised." [7]   210 Ga. 665, 668, 82 S. E. 2d 217, 219.

---

[6] *Smith* v. *Georgia,* 2 Ga. App. 574, 59 S. E. 311, cited by the majority, is not to the contrary. There the court recognized that due diligence is required in making an extraordinary motion for new trial, and held, consistent with the Georgia practice of treating the various objections on an individual basis, that the requirement of ordinary diligence had been satisfied where counsel had interrogated the subsequently disqualified juror concerning his relation with the prosecutor and had obtained a negative answer.

[7] On May 26, 1953, on its front page, the Atlanta Constitution ran a complete story of the reversal of Avery's case here. It is interesting to note that an article in the same paper pointed out "that old cases in which convictions were obtained under the two-color jury selection system could not be reopened because objections must have been made at the time of the trial." The same day, the Atlanta

It is evident on this record that, even if the Georgia court is deemed to have discretion in this matter, it could adhere to its present decision and not be reversed in this Court without a major departure from our doctrines requiring respect for state procedural rules affording a "reasonable opportunity" to present federal questions. Cf. *Parker* v. *Illinois,* 333 U. S. 571.

Had the state court possessed the power, it might have been desirable to have permitted petitioner to adjudicate his substantial constitutional claim instead of sending him to his death because his attorney failed to take advantage of the usual opportunity afforded by the state law. On the other hand, had the jury acquitted petitioner, he would not have complained about any unconstitutionality in its selection. A State may be influenced by the unfairness of allowing the litigant who remains silent two chances for acquittal while giving the diligent litigant only one. And orderly administration of the laws often imposes hardships upon those who have not properly preserved their rights. In any event, the resolution of these conflicting interests should be a matter wholly for the Georgia courts. See *Herndon* v. *Georgia,* 295 U. S. 441.

MR. JUSTICE MINTON, with whom MR. JUSTICE REED and MR. JUSTICE CLARK join, dissenting.

Georgia has a rule of law that the jury panel must be challenged at the threshold, that is, as Georgia expresses it, before the panel is "put upon the defendant." If the

---

Journal carried a story that Fulton County was "moving to ban different colored jury slips." The subhead on the article said, "Court ruling against practice draws prediction of action." This article concluded with a paragraph:

"The change to all-white slips will have no effect on cases already adjudicated but will affect cases now in progress where the point of different colored jury slips has been raised."

panel is not thus challenged, the issue cannot later be raised and is considered as waived "once and for all." *Williams* v. *State,* 210 Ga. 665, 669, 82 S. E. 2d 217, 220. Ga. Code Ann., § 59–803. See *Jordan* v. *State,* 22 Ga. 545.

This is a reasonable rule. It gives the State an opportunity to meet the challenge and to justify the array, or, if it is improperly constituted, an opportunity to correct it.

In the instant case, the challenge to the array was not presented at the time the panel was put upon the petitioner-defendant. If the defendant thus fails to challenge the array before it is put upon him, he may not raise the question as to its legality for the first time in a motion for a new trial. *Lumpkin* v. *State,* 152 Ga. 229, 231, 109 S. E. 664, 665. Such a requirement complies with the Federal Constitution. *Brown* v. *Allen,* 344 U. S. 443, 480.

Since petitioner did not and could not raise the question on a motion for new trial for the first time, it would seem that he could not raise it on an extraordinary motion for a new trial. The trial court dismissed the motion, and the State Supreme Court affirmed. First, the court held that the petitioner could not challenge the array for the first time by motion for a new trial or extraordinary motion for a new trial. The Georgia Supreme Court on that said:

> "It is settled law in this State that, when a panel of jurors is put upon the prisoner, he should challenge the array for any cause which would go to show that it was not fairly and properly put upon him, and that if he fails to do so, the objection is waived and can not thereafter be made. a ground of a motion for new trial. See *Lumpkin* v. *State,* 152 *Ga.* 229 (109 S. E. 664); *Cornelious* v. *State,* 193 *Ga.* 25 (17 S. E. 2d 156); *Cumming* v. *State,* 155 *Ga.* 346 (117

S. E. 378); *Moon* v. *State*, 68 *Ga.* 687; and *Williams* v. *State*, 31 *Ga. App.* 173 (120 S. E. 131). In the instant case, the defendant made no objection to the jury when the panel was put upon him, and made no objection until he filed this extraordinary motion for new trial after a new trial had been denied and that judgment affirmed by this court. See *Williams* v. *State,* ante. It follows, therefore, that the judgment of the court below dismissing the extraordinary motion for new trial was not error.

"The defendant and his attorney state that they did not know of the facts set out in grounds one and two of the motion for new trial, and 'that the same could not have been discovered by him in the exercise of ordinary diligence.' This is not sufficient to excuse the defendant from the necessity of presenting his written challenge to the array of traverse jurors when the panel was put upon him. See, in this connection, *Lumpkin* v. *State,* supra; *Cornelious* v. *State,* supra; *Redding* v. *State,* 183 *Ga.* 704 (189 S. E. 514); *Edge* v. *State,* 200 *Ga.* 257 (36 S. E. 2d 673). It follows, under the decisions of this court above cited, it was not error to dismiss the extraordinary motion for new trial." 210 Ga. 665, 667–668, 82 S. E. 2d 217, 218–219.

After deciding this matter of state law, the Supreme Court of Georgia further held that the extraordinary motion was insufficient. The defendant, in his affidavit supporting the motion, deposed: " 'The defendant did not at the time of his trial . . . have any information concerning the selection, drawing, organizing, and impaneling of the jury panel put upon him on his trial, but assumed that the jury was a legal jury.' " *Id.,* at 668, 82 S. E. 2d, at 219. Also defendant's attorney deposed in his supporting affidavit that he " 'did not know of the

facts set out in the first and second grounds of the extraordinary motion for new trial . . . before the trial and before the verdict in said case, and that the same could not have been discovered by him in the exercise of ordinary diligence.' " *Ibid.*

Such allegations, the court held, were "merely opinion, without sufficient facts being shown by which the court could judge whether due diligence had been exercised, and are not sufficient to support an extraordinary motion for new trial. *Edge* v. *State,* supra; *Redding* v. *State,* supra." *Ibid.*

Thus the Georgia Supreme Court held, first, that the challenge to the array must be made when the array is put upon the defendant and cannot be made later by motion for a new trial or extraordinary motion for new trial; and, second, that the grounds for the latter motion were insufficient.

This first holding is a well-established rule of law of Georgia and does not seem to have been applied discriminatorily so as to deny petitioner the equal protection of the law. He had the same right and opportunity to raise the question as anyone else.

The promulgation of such a rule of law is, as we have pointed out, fair and reasonable and cannot be said to deny due process of law. Georgia has provided a reasonable time and manner in which the question could be raised. Petitioner did not take advantage of it, probably because, as his attorney alleged in his affidavit, he "devoted his time and efforts to ascertaining the nature of the evidence to be presented by the State of Georgia upon the trial."

This Court cites a number of Georgia cases in which extraordinary motions were granted by the Georgia Supreme Court where an individual juror without knowledge of the facts was permitted to sit even though disqualified. But, in each of these cases, proper motions

in due form and sufficient were presented and the question raised at the first opportunity.

This Court now says that the Georgia Supreme Court has the power to grant the petitioner's motion. I suppose that it has, but I would not think that it had denied a federal constitutional right if it did not change its rule. In fact, I think it would lead to absurd results if it changed its rule that the challenge to the array must be made at the threshold. The defendant, knowing of an error in the constitution of the array, could lay low and always have a built-in error on which he could rely if he did not like the results at the trial. Georgia is not bound to change its rule on penalty of a violation of the Federal Constitution. *Avery* v. *Georgia,* 345 U. S. 559, does not decide this case because in that proceeding the challenge was timely made.

We do not sit as a legal critic to indicate how we think courts should act. If a federal constitutional right is not presented, we have no duty to perform. There was no denial of equal protection of the law or of due process. This case was disposed of by the Georgia Supreme Court altogether on state grounds. In such circumstances our duty is clear. As we stated in *Edelman* v. *California,* 344 U. S. 357, 358–359:

> "It is clear that this Court is without power to decide whether constitutional rights have been violated when the federal questions are not seasonably raised in accordance with the requirements of state law. *Hulbert* v. *City of Chicago,* 202 U. S. 275 (1906); *Mutual Life Ins. Co.* v. *McGrew,* 188 U. S. 291, 308 (1903). Noncompliance with such local law can thus be an adequate state ground for a decision below. . . ."

Therefore, I would dismiss the writ of certiorari as improvidently granted.